NO. 12-06-00205-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS



VICKIE ELAINE WESSON,
§
 APPEAL FROM THE THIRD

APPELLANT

 

V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 ANDERSON COUNTY, TEXAS






OPINION


 Vickie Elaine Wesson appeals her conviction of bribery, for which she was sentenced to
imprisonment for eight years, probated for eight years. Appellant raises fifteen issues on appeal. 
We affirm.


Background


 Appellant was charged by indictment with bribery and pleaded "not guilty." The matter
proceeded to jury trial. 

 The record shows that, on March 7, 2002, Appellant served the City of Palestine (the "City")
in dual roles as both its tax assessor-collector and its customer service supervisor. As tax assessor-collector, she was responsible for collecting all taxes, including back taxes, owed to the City. As
customer service supervisor, she was responsible for sending out invoices pertaining to what the
City's water customers owed the City, collecting these invoices, and determining which rates to
apply to different classifications of property in the City. 

 Robert Sherrill, Chief Financial Officer for the City, testified that he was Appellant's
supervisor at the tax office. Sherrill testified that Appellant had the discretion to make adjustments
to water rates when customers believed they were being improperly charged by the City. Sherrill
also testified that he trusted Appellant to make these adjustments and would normally approve
adjustments Appellant made based upon his confidence in her integrity. Curtis Snow, who was the
City Manager in March 2002, testified that it was the City's policy to first apply any customer
refunds based on rate changes to delinquent accounts owed to the City. 

 On March 7, 2002, Helen Whaley, Connie Talley, Cheneya Farmer, and Jennifer Weisinger
all worked under Appellant's supervision in the tax office. Each testified that Appellant knew the
password to login to the computers they used to process payments made to the City to be applied
toward tax and water invoices. Each of these tax office employees further testified that Appellant
required them to leave their respective keys to their cash drawers so that she would be able to access
the drawers in their absence. Each of the four also testified that one customer, Glinnis Utah "Dick"
Thompson, would deal only with Appellant when he came to the tax office to pay his water and
sewage bill. 

 On March 7, 2002, Thompson met with Appellant regarding his February 2002 water invoice. 
The invoice indicated Thompson had been billed at commercial water rates. Appellant represented
to Sherrill that Thompson should have been charged at the residential rate and was, thus, owed a
refund for the difference. 

 Sandra Ives, who was responsible for processing payments on behalf of the City, testified that
Appellant came to her and asked that she immediately issue a check payable to Thompson in the
amount of $7,183.71. Ives testified that this "quick check" was handled outside the normal
procedure for refunds. Normally, all refund checks would be processed at one time for the entire
week. Sherrill approved the issuance of this "quick check" by Appellant after Appellant presented
it to him. Sherrill testified that he would not have approved it if he had known that Thompson owed
money to the City for his back taxes. Sue Miles, who worked for a law firm collecting delinquent
taxes on behalf of the City, testified that in 2002 Thompson owed the City $14,465.86 in delinquent
taxes. Miles further testified that Thompson had been delinquent in his taxes since 1997.

 That same day, Thompson issued a $1,000.00 check payable to the order of "V. Wesson." 
This check was cashed at the tax office. Frank Campos, auditor for the City, testified that it appeared
as though someone had taken $1,000.00 out of the March 7 cash account in exchange for the
$1,000.00 check. He stated that there was a check/cash differential of one thousand dollars in the
tax office for March 7. Campos examined a receipt issued by the tax office on March 7, 2002 for
a $125.00 payment made on Appellant's delinquent water account. Campos testified that the receipt
corresponded with the $1,000.00 check from Thompson made out to Appellant. However, tax office
records showed that cash had been received for this $125.00 payment toward Appellant's water
account. 

 Appellant's account statement for the month of March 2002 with MoPac Employees Federal
Credit Union in Palestine, Texas was admitted as an exhibit at trial. The statement indicated that
charges were being assessed against Appellant's account daily because the account was overdrawn
during the first week of March 2002. However, on March 7, 2002, a cash payment of $300.00 was
applied to Appellant's account. 

 Acting on his concern that there existed questionable financial dealings between Appellant
and Thompson, Snow directed that an investigation into the matter be undertaken. Snow testified
that he confronted Appellant about why Thompson had received the $7,183.71 refund when he owed
the City double that amount in taxes. Snow stated that he was not satisfied with Appellant's
explanation and informed her that he intended to terminate her based on her improper dealings with
Thompson in her official capacities. Upon hearing this, Appellant resigned her positions with the
City.

 At the conclusion of trial, the jury found Appellant "guilty" as charged. Thereafter, the trial
court sentenced Appellant to imprisonment for eight years, probated for eight years. Appellant
timely filed this appeal.


Evidentiary Sufficiency


 In her sixth and seventh issues, Appellant contends that there was neither legally nor factually
sufficient evidence to support the existence of an agreement between Thompson and Appellant. In
her eighth and ninth issues, Appellant contends that the evidence was neither legally nor factually
sufficient to support the remaining elements of bribery.

Standard of Review and Governing Law

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.-San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is
whether any rational trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury's
verdict. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. A successful
legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. See Tibbs
v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

 On the other hand, in reviewing for factual sufficiency, we consider all the evidence weighed
by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the
evidence that tends to disprove that fact. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997). Although we are authorized to disagree with the jury's determination, even if probative
evidence exists that supports the verdict, our evaluation should not substantially intrude upon the
jury's role as the sole judge of the weight and credibility of witness testimony. Id.; see Clewis v.
State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Where there is conflicting evidence, the jury's
verdict on such matters is generally regarded as conclusive. Van Zandt v. State, 932 S.W.2d 88, 96
(Tex. App.-El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if
taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). A verdict will be set aside "only if the evidence supporting guilt is so obviously weak,
or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the
conviction clearly wrong and manifestly unjust." Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App.
2002); see also Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (evidence is factually
insufficient only when reviewing court objectively concludes that the great weight and
preponderance of the evidence contradicts the verdict); Sims v. State, 99 S.W.3d 600, 601 (Tex.
Crim. App. 2003).

 The sufficiency of the evidence is measured against the elements of the offense as defined
by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997). Such a charge would include one that "accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the
State's theories of liability, and adequately describes the particular offense for which the defendant
was tried." Id.

 A person commits the offense of bribery if she intentionally or knowingly offers, confers, or
agrees to confer on another, or solicits, accepts, or agrees to accept from another any benefit as
consideration for the recipient's decision, opinion, or recommendation, vote, or other exercise of
discretion as a public servant. See Tex. Penal Code. Ann. § 36.02(a)(1) (Vernon 2003). Section
36.02 focuses on the mental state of the public official who has accepted or agrees to accept a bribe
in exchange for the exercise of her discretion. See Cerda v. State, 750 S.W.2d 925, 927 (Tex. App.-
Corpus Christi 1988, pet. ref'd). A defendant's culpable mental state can be inferred from
circumstantial evidence, such as her words, acts, and conduct. See State v. Walker, 195 S.W.3d 293,
300 (Tex. App.-Tyler 2006, no pet.) (citing Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App.
2004)).

Legal Sufficiency

 Appellant argues there was no direct evidence that she accepted a bribe from Thompson to
influence her discretion as a public official. Appellant further contends that the circumstantial
evidence of record is not enough to prove that she committed bribery. 

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the
jury could have reasonably determined from both direct and circumstantial evidence that Appellant
accepted $1,000.00 from Thompson in exchange for her use of discretion as a public official to
benefit him at the expense of the taxpayers of Palestine, Texas. Snow testified that Thompson told
him that the $1,000.00 check made out to Appellant on March 7, 2002 was given as a personal loan
to Appellant. For Appellant to have given an immediate $7,183.71 refund check to Thompson when
Thompson owed $14,465.86 in back taxes to the City while contemporaneously receiving $1,000.00
from Thompson was a perversion of her discretion. Thus, having considered both the direct and
circumstantial evidence in the light most favorable to the jury's verdict, we hold that there existed
legally sufficient evidence to satisfy the elements of bribery beyond a reasonable doubt. 

Factual Sufficiency

 Appellant further contends that there was factually insufficient evidence to support that she
had taken $1,000.00 from a cash drawer of the tax office on March 7, 2002. Appellant notes that
the $1,000.00 check from Thompson had been cashed through Weisinger's drawer. During trial,
Appellant suggested that Weisinger or another of the clerks working in her office could have taken
the cash from the drawer. But Weisinger and the other clerks testified that they had not taken
$1,000.00 from any of the cash drawers in the office on March 7, 2002. Additionally, each of the
clerks testified that Appellant knew their respective passwords necessary to login to their computers
and had access to the keys to their respective cash drawers. 

 Appellant further contended at trial that if the State's position that she had used $125.00 from
the $1,000.00 check from Thompson to pay toward her water bill with the City was true, the cash
in the drawer should have been short only $875.00. This would conflict with the $1,000.00 shortage
on March 7, 2002 about which Campos testified. However, Campos rebutted Appellant's
contention, stating that Appellant could have taken $1,000.00 out of the cash drawer and then
applied $125.00 to her water bill. Campos further testified that, alternatively, Appellant could have
removed $875.00 only after satisfying the tax office's computer system that cash was received in
issuing the receipt for the $125.00 payment. Either way, according to Campos, cash had been
received in exchange for the receipt issued to Appellant.

 Appellant also introduced evidence tending to demonstrate that the $300.00 cash payment
made to MoPac Employees Federal Credit Union on March 7, 2002 could have come from a
different source. Appellant's husband, Lonnie Wesson, testified that he sold a four wheeler on
March 4, 2002 and gave the proceeds of the sale to Appellant. Thus, according to Wesson, these
sales proceeds could have been the source of the $300.00 Appellant applied to her credit union
account on March 7, 2002.

 We have reviewed the record in its entirety. We iterate that our evaluation should not
substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness
testimony, see Santellan, 939 S.W.2d at 164, and where there is conflicting evidence, the jury's
verdict on such matters is generally regarded as conclusive. See Van Zandt, 932 S.W.2d at 96. The
jury was presented with different versions of who could have taken the $1,000.00 out of the cash
drawer of the City tax office on March 7, 2002. Appellant cast blame upon other City employees
working under her supervision. Appellant also presented evidence to suggest an alternative manner
in which the cash payments on her water bill and to her overdrawn account with the credit union
could have been made. 

 Nonetheless, the jury was entitled to determine the weight to be afforded the testimony of a
witness and to resolve any conflicts in the evidence. See Westbrook, 29 S.W.3d at 111; see also
Watson, 204 S.W.3d at 409. Our review of the record as a whole, with consideration given to all
of the evidence both for and against the jury's finding, has not caused us to conclude that the proof
of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render
Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold the evidence is
factually sufficient to support the jury's verdict. Appellant's sixth, seventh, eighth, and ninth issues
are overruled. 


Gravamen of Bribery


 In her second, third, fourth, and fifth issues, Appellant contends that it was legally and
factually impossible for her to have committed bribery because the testimony at trial demonstrated
that the exact rates to be charged for water under the City's ordinance could not be determined. 
Appellant therefore contends that the water rates as described in the City's ordinance were
unconstitutionally vague.

 Appellant's issues miss the mark. The gravamen or gist of the offense of bribery is the
conferring of a benefit upon a public servant as consideration for her discretion being improperly
applied. See Gahl v. State, 721 S.W.2d 888, 893 (Tex. App.-Dallas 1986, pet. ref'd). It is axiomatic
that the public places its trust in governmental officials with the expectation that they will exercise
the discretion given to them to benefit the citizenry. When that discretion is perverted by a bribe that
results in special treatment of one citizen, public trust is corrupted and corroded. See Cox v. State,
316 S.W.2d 891, 894 (Tex. Crim. App. 1958).

 The gravamen or gist of the State's case against Appellant was that Appellant exercised the
discretion given to her by the City to benefit herself and Thompson at the expense of the City and
its citizens by giving Thompson an expedited refund of $7,183.71 rather than applying it to the
$14,465.86 tax bill as she was required by City policy to do. That same day, she received $1,000.00
from Thompson. The adjustment Appellant made to Thompson's water invoice, however it was to
be calculated, was not an essential underpinning of the bribery charge on which Appellant was
convicted. Therefore, we need not consider Appellant's issues concerning the validity of the City's
ordinance relating to water rates. Appellant's second, third, fourth, and fifth issues are overruled.


Variance in Name at Trial and in Indictment


 In her first issue, Appellant contends that there was a fatal variance in the indictment with
regard to Thompson's name. Specifically, Appellant argues that the indictment alleged that
Appellant received a bribe from "Glinnis Utah 'Dick' Thompson" while, at trial, Thompson was
only referred to as "Dick Thompson." Thus, Appellant urges that there was no evidence at trial that
she received a bribe from Glinnis Utah "Dick" Thompson as alleged.

 When a person is known by two or more names, it shall be sufficient to state either name for
purposes of allegations in the indictment. See Tex. Code. Crim. Proc. Ann. art. 21.07 (Vernon
Supp. 2007). In the case at hand, the indictment alleges both of Thompson's given names, Glinnis
Utah and his nickname, "Dick." Therefore, we conclude that no variance was shown and that there
was sufficient proof to cause a rational person to conclude that Thompson had bribed Appellant as
alleged in the indictment. See Lopez v. State, 610 S.W.2d 764, 765 (Tex. Crim. App. 1981). 
Appellant's first issue is overruled.


Prosecutorial Comment on Appellant's Failure to Testify


 In her tenth issue, Appellant argues that the prosecutor made an improper comment during
jury argument on her failure to testify. Specifically, Appellant argues that the following
prosecutorial statement violated her constitutional right to remain silent:


 .... But I think that all of that happened on March 7th. Well, I still go back to this
receipt. This receipt, that's the first time we saw that was Tuesday. The first
time we ever saw this check.

 

 Ladies and gentlemen, this case has been going on two years. If this evidence ...
exonerates Mrs. Wesson, my goodness, do you think she would come to the police
or told us, no, there is - wait a minute. I have got my receipt. I saved it. Do you
think? How many receipts do you have that you can both put your hands on for a
water bill four years ago? 

 

 So Vickie Wesson has some evidence. What more does she have that she has still
got over there?

 

 To violate an appellant's constitutional and statutory rights, the objectionable comment, from
the jury's perspective, "must be manifestly intended to be or of such a character that the jury would
necessarily and naturally take it as a comment on the accused's failure to testify." Fuentes v. State,
991 S.W.2d 267, 275 (Tex. Crim. App. 1999) (citing Banks v. State, 643 S.W.2d 129, 134-35 (Tex.
Crim. App. 1982)). If an accused does not testify on her own behalf, the fact cannot be made the
subject of comment by the prosecution. See Stafford v. State, 578 S.W.2d 394, 395 (Tex. Crim.
App. [Panel Op.] 1978). A comment on an accused's failure to testify violates the accused's state
and federal constitutional privileges against self incrimination. Bustamante v. State, 48 S.W.3d 761,
764 (Tex. Crim. App. 2001). Such a comment also runs afoul of Texas Code of Criminal Procedure,
article 38.08, which prohibits the State from alluding to or commenting on an accused's failure to
testify. Roberson v. State, 100 S.W.3d 36, 40-41 (Tex. App.-Waco 2002, pet. ref'd). Calling
attention to the absence of evidence that only the defendant could produce will result in reversal only
if the remark can be construed or refer to the appellant's failure to testify and not the defense's
failure to produce evidence. See Fuentes, 991 S.W.2d at 275.

 In the instant case, we have reviewed the prosecutor's remarks in the context of his argument
as a whole. Having done so, we find nothing alluding to anything about Appellant's failure to
testify. The statements of which Appellant complains refer to how unusual it was for a person to
save a receipt for a water bill she paid over four years prior. The prosecutor further questioned why
Appellant had not turned over the receipt and any other exonerating documentary evidence in her
possession to the authorities investigating the bribery allegations. Thus, we hold that the
prosecutor's remarks do not naturally and necessarily refer to Appellant's failure to testify. See id. 
Appellant's tenth issue is overruled.


Prosecutor's Use of a Story in Closing Argument


 In her eleventh issue, Appellant contends that the prosecutor improperly referred to evidence
outside of the record during his jury argument. Specifically, the prosecutor's statements to which
Appellant refers are as follows:


 [Prosecutor]: My wife, in ... growing up she had different jobs. She did some cashier work. Because you can see that I can't add. I said, Dianne, what happens if as a cashier that you ring no sale.


 [Appellant]: Your Honor, I am going to object. This is outside of the evidence what his wife told him.


 The Court: Overruled.


 [Prosecutor]: What happens when a cashier rings up no sale two or three times during a day? Or 

 what happens if there is a mistake between the cash and the checks? Well, you are not working there much longer. Because they are going to be talking to you every day about why you - it may balance out, but no sales. Because that's how you steal. 
 Maybe Mr. Swift can't figure that out. But that's the way that you take money out is to manipulate the cash and checks. Because it is all going to come out the same if it is a no sale or if it is a check.


 The purpose of closing argument is to facilitate the jury's proper analysis of the evidence
presented at trial so that it may arrive at a just and reasonable conclusion based on the admitted
evidence alone. Fant-Caughman v. State, 61 S.W.3d 25, 28 (Tex. App.-Amarillo 2001, pet. ref'd). 
Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for
law enforcement. See Gallow v. State, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). 

 Here, the remarks made by the prosecutor in closing argument fall into the third category--an
answer to opposing counsel's argument. During both the presentation of evidence and jury
argument, Appellant's counsel continually stated to the jury that the State's numbers did not add up. 
Specifically, Appellant's counsel said Campos's testimony that on March 7, there was a one
thousand dollar difference between the cash the tax office had taken in and what was actually in the
cash drawer at the end of the day was not correct. Appellant's counsel told the jury that if $125.00
had been applied to Appellant's water bill, there should be a difference of only $875.00 in the cash
drawer after Thompson's check to Appellant was cashed.

 Thus, in his response to Appellant's counsel's recently concluded jury argument, the
prosecutor was attempting to show how a person with access to the cash register could have
manipulated the funds therein. The prosecutor, throughout the trial, had indicated his lack of skill
in mathematics. Therefore, he used a story about his wife to attempt to show what he perceived as
a fallacy in Appellant's closing argument. We hold that the use of a story in this fashion is
permissible jury argument and did not introduce new evidence into the proceeding. Appellant's
eleventh issue is overruled.


Cumulative Evidence


 In her twelfth issue, Appellant contends that the trial court erred when it refused to allow her
to introduce Campos's written billings into evidence. The State responds that Campos had testified
the amount he had been paid by the City for his audit work and that the introduction of his actual
billings would amount to cumulative evidence that was unnecessary for the jury to consider. We
agree. 

 A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion
standard. See Rodriguez v. State, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); Montgomery v.
State, 810 S.W.2d 372, 390-91 (Tex. Crim. App. 1990). The trial court is in the best position to
decide questions of admissibility, and we will uphold a trial court's decision to admit or exclude
evidence if it is within "the zone of reasonable disagreement." Rodriguez, 203 S.W.3d at 841.

 Texas courts have recognized cumulativeness as a factor that may allow the exclusion of
relevant evidence. Alvarado v. State, 912 S.W.2d 199, 213 (Tex. Crim. App. 1995). The word
"cumulative" suggests that other evidence on the same point has been received. See id. Although
it may be relevant, evidence may be excluded by a trial court if its probative value is outweighed by
the danger of needless presentation of cumulative evidence. Casey v. State, 215 S.W.3d 870, 879
(Tex. Crim. App. 2007); see also Tex. R. Evid. 403. Undue delay and needless presentation of
cumulative evidence concern the efficiency of the trial proceeding rather than the threat of an
inaccurate decision. Casey, 215 S.W.3d at 880. 

 In the case at hand, Appellant contends that the jury needed to know what Campos was being
paid because his credibility was a factor in the case. As we have noted previously, the evidence
concerning what Campos had been paid was presented to the jury through testimony. Yet, Appellant
further sought to present documentary evidence to the jury concerning what amount Campos had
been paid. The record indicates that even Appellant's counsel conceded that the record for just one
year of Campos's billings to the City was "fairly lengthy." Thus, because Appellant has shown us
no reason why the testimony about Campos's billings to the City for his services as its auditor was
insufficient to allow the jury to judge his credibility, we decline to disturb the trial court's decision
not to allow the documentary evidence. See Montgomery, 810 S.W.2d at 390-91; see also Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Appellant's twelfth issue is overruled. 


Relevance of Financial Circumstances


 In her thirteenth issue, Appellant contends that evidence of her other financial dealings with
Thompson was irrelevant and that the trial court erred by admitting such evidence. Specifically,
Appellant argues that the evidence regarding her promissory note with Elkhart State Bank, which
Thompson cosigned, was irrelevant. Appellant further contends that the records of Thompson's tax
delinquencies with the City were irrelevant and prejudicial. Finally, Appellant argues that the trial
court's permitting testimony regarding Thompson's purchase of carpet from Appellant was also in
error.

 As before, we review the errors of which Appellant complains concerning admissibility of
evidence for abuse of discretion. See Rodriguez, 203 S.W.3d at 841; Montgomery, 810 S.W.2d at
390-91; see also Santellan, 939 S.W.2d at 169. Relevant evidence is evidence having any tendency
to make the existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence. Tex. R. Evid. 401. Evidence is
generally admissible unless there is a law or rule prohibiting it. See Tex. R. Evid. 402. 

 Evidence of a person's actions is admissible to prove motive. See Tex. R. Evid. 404(b). 
Furthermore, an accused's financial circumstances at the time of a purported crime is relevant
because it assists the jury in determining motive. See United States v. Anderson, 933 F.2d 1261,
1274 (5th Cir. 1991); see also United States v. Williams, 264 F.3d 561, 575 (5th Cir. 2001)
(financial circumstances of defendant can be relevant in determining motive and are, therefore,
admissible). Thus, we hold that Appellant's financial dealings with Thompson were relevant
evidence of her motive and, therefore, properly admitted by the trial court. Appellant's thirteenth
issue is overruled.


Expert Testimony


 In her fourteenth issue, Appellant argues that the trial court erred by permitting Campos and
Michael Ohrt, an administrative assistant to the City Manager, to testify concerning the City's
computer system without establishing their respective qualifications as expert witnesses pursuant
to Texas Rule of Evidence 702.

 To preserve a complaint for appellate review, a party must have presented to the trial court
a timely objection stating the specific grounds for the objection, if the grounds are not apparent from
the context. See Tex. R. App. P. 33.1. The objection at trial must comport with the issue raised on
appeal. See Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). The initial burden of
establishing a witness's qualifications lies with the party offering the testimony. See Matson v.
State, 819 S.W.2d 839, 852 (Tex. Crim. App. 1991). When a party wishes to challenge an expert's
qualifications, it is incumbent upon that party to object and to demonstrate the witness's
incompetency through voir dire. Id.

 In the case at hand, Appellant objected as follows to Campos's qualifications:


 [Prosecutor]: All right. It shows the balance at 55.37? 

 

 [Witness]: That's correct.


 [Prosecutor]: All right. Now, what about that balance? Does that balance - if you want to reprint that receipt say today -


 [Appellant's Counsel]: Your Honor, I have an objection. I don't think that he is qualified to talk about that. 
 He is not an expert on the [C]ity's computer program.


 The Court: Overruled.


 [Prosecutor]: Have you made yourself aware that the balance actually--it actually floats--not
floats, but--


 [Witness]: It puts--whenever you print out that receipt, it's the actual balance of the day the
receipt is printed.


 Appellant points out that Campos had no forensic experience. Therefore, she argues,
Campos was not qualified to answer when the prosecutor asked him whether the unpaid balance
shown on a printed receipt was current as of the date the receipt was printed. Appellant admits,
however, that Campos was a CPA, and it is clear from the record that he was also the City's auditor. 
As the City's auditor, Campos undoubtedly was familiar with the City's accounting processes and
the meaning of the information shown on its receipts. Therefore, Campos answered the prosecutor's
question from his own personal knowledge and was not offering expert testimony. 

 With regard to Ohrt's qualifications, Appellant made the following objection: 


 [Prosecutor]: So we have encountered this situation where when the receipts were reprinted and a customer's balance was different than the original receipt.

 .... 

 

 Can you explain why there would be a difference from the original receipt? 


 [Appellant's Counsel]: Your Honor, I have an objection. I don't think that he is qualified to answer this....


 The Court: Overrule the objection.


 [Witness]: In taking a look at receipts, I was actually asked to reprint one today that initially 

 transpired in I want to say either '02 or '03. And when I reprinted that receipt[,] all of the information was the same except for the account balance. The balance or the balance remaining that showed up on the receipt was a balance remaining on today's date.


 We first note that Appellant's objection to Ohrt's testimony was not the broad objection
pursuant to Rule 702 that she has raised on appeal. See Tex. R. App. P. 33.1 (party must present to
trial court a timely objection stating the specific grounds for the objection, if the grounds are not
apparent from context); see also Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)
(objection at trial must comport with issue raised on appeal). Moreover, the record does not reflect
that Appellant attempted to demonstrate Ohrt's incompetency through a voir dire examination. See 
Matson, 819 S.W.2d at 852. Appellant's general objection that Ohrt was not qualified, without
more, did not suffice to bring the substance of Appellant's complaint to the trial court's attention. 
See id. Thus, in light of the fact that Appellant did not seek to demonstrate Ohrt's incompetency
through a voir dire examination, we hold that Appellant failed to preserve the error, if any of which
she now complains with regard to Ohrt's qualifications as an expert witness. (1) Appellant's fourteenth
issue is overruled. 

 Cumulative Error


 In her fifteenth issue, Appellant contends that the combination of errors that occurred during
trial resulted in an unfair trial and an improper verdict. While it is conceivable that a number of
errors may be found harmful in their cumulative effect, nonerrors may not by their cumulative effect
cause error. See Owens v. State, 96 S.W.3d 668, 673 (Tex. App.-Austin 2003, no pet.) (citing
Chamberlain v. State, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999)). 

 Here, in analyzing Appellant's preceding fourteen issues, we have not held that the trial court
committed error. Therefore, there can be no cumulative error. Id.  Appellant's fifteenth issue is
overruled. 

Disposition


 Having overruled each of Appellant's fifteen issues, we affirm the trial court's judgment.



 JAMES T. WORTHEN 

 Chief Justice




Opinion delivered May 30, 2008.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.


 























(DO NOT PUBLISH)
1. Appellant's chief complaint with regard to Ohrt's testimony is that it "allowed the admission of Exhibit
18, which should have been excluded . . . [and] was extremely damaging." Although we recognize that Ohrt's
testimony was not limited to his statements regarding State's Exhibit 18, we note that Appellant herself sponsored
and secured the admission of State's Exhibit 18, and thus, is estopped on appeal from complaining of its alleged
erroneous admission. See Prystash v. State, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999); Heidelberg v. State, 36
S.W.3d 668, 672 (Tex. App.-Houston [14th Dist.] 2001, no writ) (citing Ohler v. United States, 529 U.S. 753, 755,
120 S. Ct. 1851, 1853, 146 L. Ed. 2d 826 (2000)).