**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VEHICLE MARKET RESEARCH, INC.,

     Plaintiff - Appellant,

v.

MITCHELL INTERNATIONAL, INC.,

     Defendant - Appellee.

No. 15-3243

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:09-CV-02518-JAR)**
_____

Submitted on the briefs:[*]

Nora M. Kane, Stinson Leonard Street, Omaha, Nebraska, for Plaintiff-Appellant.

Scott T. Schutte and Tedd M. Warden, Morgan Lewis & Bockius, LLP, Chicago, Illinois, for Defendant-Appellee.
_____

Before **HARTZ**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

# I.  INTRODUCTION

Vehicle Market Research, Inc. (VMR) sued Mitchell International, Inc. (Mitchell) to recover royalties Mitchell allegedly owed pursuant to a software licensing agreement. The jury returned a verdict for Mitchell, and VMR appeals. VMR first argues the district court erred by allowing Mitchell, contrary to the law of the case doctrine, to cross-examine VMR's sole shareholder on the value of VMR as he stated in his personal bankruptcy. Second, VMR contends the district court erred in omitting part of VMR's proposed jury instruction on Rule 30(b)(6) witnesses. We affirm.

# II.  BACKGROUND[1]

John Tagliapietra is the sole shareholder of VMR. In 1997, he developed the TLSS Product, designed to "assist[] automobile insurers in providing a fair market value for a vehicle that has been declared a total loss." *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 767 F.3d 987, 989 (10th Cir. 2014) [hereinafter *VMR I*] (citation omitted). VMR licensed this product exclusively to Mitchell, a company that provides products and solutions for insurance companies and collision repair facilities. In return, Mitchell agreed to pay a $1.00 royalty each time it used VMR's product, up to a maximum of $4.5 million.[2] Mitchell paid VMR royalties of between $200 and $3,300 monthly until September 2005.

---

[1] For a more detailed factual history, refer to our prior decision in *Vehicle Market Research, Inc. v. Mitchell International, Inc.*, 767 F.3d 987 (10th Cir. 2014) [hereinafter *VMR I*].

[2] The agreement initially specified $3.5 million, but the parties amended this amount to $4.5 million in 2002. *VMR I*, 767 F.3d at 990.

Although Mitchell never terminated the agreement with VMR, in November 2005, it released its own product for assessing vehicle fair market value (the Mitchell Product) and used it exclusively thereafter. Accordingly, Mitchell discontinued paying royalties to VMR.

Mr. Tagliapietra filed Chapter 7 bankruptcy in October 2005. *Id.* at 991. On his bankruptcy schedules, he listed the value of VMR's stock as "0.00." He did so because he "was no longer receiving royalties from Mitchell; had no expectation of receiving additional royalties from Mitchell; did not have possession or right to possess the software developed for Mitchell because the Agreement was never terminated; and had no other assets." *Id*.

Approximately a year and half later, in mid-2007, Mr. Tagliapietra began to suspect that Mitchell had used VMR's intellectual property to develop the Mitchell Product. After examining the Mitchell Product in 2009, Mr. Tagliapietra became convinced it infringed on VMR's proprietary rights.

On October 5, 2009, VMR filed a complaint against Mitchell claiming over $4 million in damages for breach of contract and other causes of action. Fifteen days later, on October 20, 2009, the bankruptcy court approved the discharge of Mr. Tagliapietra's debts based on his insolvency. The Trustee valued Mr. Tagliapietra's interest in VMR as "unknown." *VMR I*, 767 F.3d at 989.

Mitchell then moved for summary judgment under a theory of judicial estoppel based on the inconsistency between Mr. Tagliapietra's valuation of VMR at zero in his personal bankruptcy proceedings and the allegation in the pending litigation that Mitchell

3

owed VMR over $4 million in royalties. *Id.* at 992. The district court granted Mitchell's motion for summary judgment, and VMR appealed.

This court reversed and remanded, acknowledging that

> the near-simultaneous timing between Mr. Tagliapietra's bankruptcy discharge and the filing of this lawsuit is suspicious, and there is some facial incongruity between Mr. Tagliapietra's approving a valuation of "unknown" for his VMR stock given his testimony that he believed at the time he filed the lawsuit that VMR was entitled to "up to $4 million in royalties" because of the legal claim.

*Id.* at 996–97. Nevertheless, we reasoned that judicial estoppel "would have to be based on a duty by Mr. Tagliapietra to amend his bankruptcy pleadings to report a possible increased value for his VMR stock." *Id.* at 989. Because our precedent was unclear "on whether a debtor has a continuing duty to amend his bankruptcy schedules when the estate's assets change in value," we expressed "our reluctance to invoke judicial estoppel." Ultimately, we concluded Mitchell had "not met its burden of showing any clearly inconsistent statements that would warrant that relief." *Id.*

On remand and in anticipation of trial, both VMR and Mitchell filed motions in limine relating to the bankruptcy valuation. Mitchell sought an order allowing use of Mr. Tagliapietra's "inconsistent sworn statements," made during his bankruptcy, "in order to examine Mr. Tagliapietra's veracity and credibility as a witness, and for purposes of impeachment." Conversely, VMR moved to prohibit Mitchell from making any reference to the bankruptcy or Mr. Tagliapietra's statements in the bankruptcy. VMR argued that *VMR I* "foreclose[d] even a suggestion that the statements made by [Mr. Tagliapietra]

4

. . . during his bankruptcy and the statements that he's made to this court in his deposition or during his live testimony" were inconsistent.

The district court denied VMR's motion and granted, in part, Mitchell's request to use the bankruptcy valuation evidence at trial. It read our decision in *VMR I* as being limited to the issue of judicial estoppel, which is "a very egregious and harsh remedy . . . requir[ing] clearly inconsistent statements." Concluding nothing in *VMR I* precluded it from doing so, the court ruled Mitchell could impeach Mr. Tagliapietra on cross-examination with prior inconsistent statements, including from the bankruptcy proceeding. The court further instructed, however, that it would not allow "an affirmative reveal . . . by [Mitchell's counsel], whether that's in opening statement or otherwise through the testimony of another witness or whatever, any suggestion that Mr. Tagliapietra filed bankruptcy and that he did what he did in the bankruptcy."[3]

During discovery, VMR had noticed the deposition of Mitchell under Rule 30(b)(6), thereby compelling Mitchell to designate one or more persons to testify on behalf of the company as to the subject matters identified. *See* Fed. R. Civ. P. 30(b)(6). Mitchell designated Jim Lindner, its former CEO. At his 30(b)(6) deposition, Mr. Lindner testified that he would not have allowed his employees to "use" the VMR work product

---

[3] VMR mischaracterizes the district court's ruling when it states that "[i]f the lower court had ruled that Mitchell could only raise the bankruptcy if first introduced by VMR, of *course* VMR would not have done so. Instead the district court gave Mitchell *carte blanche* on this issue, and VMR was forced to defend a highly prejudicial and irrelevant issue rejected by this Court." This is incorrect. The district court specifically stated it was prohibiting Mitchell from any "affirmative reveal" of the bankruptcy or Mr. Tagliapietra's bankruptcy valuation of VMR.

in developing the Mitchell Product because that would be a breach of his "ethics of business conduct."

The case proceeded to trial. During the direct examination of Mr. Tagliapietra, VMR's counsel approached the bench and outlined her plan to raise preemptively his bankruptcy valuation statements, while preserving her argument that this court's mandate precluded the introduction of any evidence on that subject:

> [I]n light of the Court's ruling about . . . allowing Mitchell to attempt to impeach my client with prior inconsistent statements, without waiving my objection, I am going to introduce the issue. And I want it on the record that it's our vehement belief that [the Tenth Circuit opinion] precludes this—the introduction of this testimony. It's not material to this case. . . . And over that objection, I'm going to elicit testimony about the statements made in the bankruptcy court. But I—in no way, shape, or form am I waiving the objection.

VMR's counsel then questioned Mr. Tagliapietra about his bankruptcy valuation of VMR.[4] Mr. Tagliapietra admitted he "placed a zero value on VMR" in his personal bankruptcy, that at the time of his bankruptcy discharge VMR's value was "unknown," and that he acted as VMR's representative in filing the operative complaint claiming Mitchell owed VMR over $4 million in unpaid royalties. VMR's counsel allowed Mr. Tagliapietra to explain that the bankruptcy valuation and estimated royalty amount were not inconsistent, because VMR was still worth "zero."

Following this direct examination, Mitchell's counsel cross-examined Mr. Tagliapietra. The district court sustained several of VMR's objections when Mitchell

---

[4] VMR's appellate brief does itself and this court a disservice by failing to mention that its counsel strategically raised the issue of Mr. Tagliapietra's bankruptcy during direct examination in VMR's case-in-chief.

attempted to explore the bankruptcy more generally. But consistent with its earlier rulings, the district court allowed Mitchell to impeach Mr. Tagliapietra with the values he had provided in the bankruptcy petition because "based on my *limine* ruling, it was clear that anybody could go into the bankruptcy within the limitations that I had already set." Mitchell's counsel elicited testimony from Mr. Tagliapietra about his prior valuation of VMR in the bankruptcy during this cross-examination.

Also during its case-in-chief, VMR introduced Mr. Lindner's videotaped deposition. After VMR rested, Mitchell called Mr. Lindner as a witness to explain his Rule 30(b)(6) testimony, specifically what he meant when he said he would not allow his employees to "use" VMR work product. Mr. Lindner testified at trial that what he meant in his Rule 30(b)(6) deposition was that he did not want Mitchell employees "copying any of the [VMR] code."

VMR argued that Mr. Lindner's change in testimony violated Rule 30(b)(6) and proposed the following jury instruction:

> In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation. The Rule 30(b)(6) designee does not give his personal opinion. Rather, he presents the corporation's "position" on the topic. The designee testifies on behalf of the corporation and thus holds it accountable. The corporation cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative.

Following Mitchell's objection, the district court deleted the last sentence (underlined) from VMR's proposed instruction and gave it to the jury as modified.

The jury found no liability and returned a verdict in favor of Mitchell. VMR filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

7

### III.  DISCUSSION

On appeal, VMR first contends the district court erred in admitting evidence of Mr. Tagliapietra's bankruptcy valuation statements in violation of this court's mandate in *VMR I*. "We review de novo [the district court's] compliance with our mandate, 'including whether the law-of-the-case doctrine or mandate rule forecloses any of the [district court's] actions on remand.'" *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1145 (10th Cir. 2011) (citation omitted). In turn, we "review a district court's determination regarding the admissibility of evidence under an abuse of discretion standard." *United States v. Contreras*, 536 F.3d 1167, 1170 (10th Cir. 2008). We conclude that use of this valuation evidence for impeachment purposes did not violate the mandate rule and that VMR waived its right to appeal this issue because it first introduced the bankruptcy valuation evidence on direct examination of Mr. Tagliapietra.

Second, VMR argues the district court erred by improperly instructing the jury on 30(b)(6) witnesses. This court reviews the district court's refusal to give a proposed instruction for abuse of discretion, but considers de novo whether the jury instructions, as a whole, correctly state the law. *See United States v. Sorensen*, 801 F.3d 1217, 1228–29 (10th Cir. 2015). We conclude that the district court properly deleted the final sentence of VMR's proposed jury instruction on 30(b)(6) witnesses because it was an incorrect statement of the law. We therefore reject VMR's claims on appeal.

### A. The District Court Properly Allowed Mitchell to Cross-Examine Mr. Tagliapietra on His Bankruptcy Valuation of VMR

### 1. The District Court Did Not Violate the Law of the Case Doctrine

The law of the case doctrine provides, "when a court rules on an issue of law, the ruling 'should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Graham*, 704 F.3d 1275, 1278 (10th Cir. 2013) (citation omitted). After an appeal, "the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal. This principle applies to all 'issues previously decided, either explicitly or by necessary implication.'" *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995) (citations omitted).

VMR argues the prior appeal of this case—*VMR I*—precluded Mitchell from presenting evidence of or even mentioning Mr. Tagliapietra's bankruptcy on remand. As support for that position, VMR claims we held in *VMR I* that Mr. Tagliapietra's statements in his bankruptcy proceeding were consistent with his prayer for relief here. We find no support for this position in *VMR I*.

The sole question before us in *VMR I* was "whether the statements by VMR and Mr. Tagliapietra in the litigation against Mitchell were so clearly contrary to the statements made by Mr. Tagliapietra in his bankruptcy proceeding that VMR should be judicially estopped from proceeding with its suit against Mitchell." *VMR I*, 767 F.3d at 988. Although we held they were not, nowhere in that decision do we indicate the statements were consistent or that the bankruptcy valuation will be irrelevant on remand.

9

To the contrary, we expressly noted the availability of cross-examination on remand, noting that it is a less harsh remedy than judicial estoppel:

> Our rationale behind our cautious application of the doctrine is that judicial estoppel is a powerful weapon to employ against a party seeking to vindicate its rights, and there are often lesser weapons that can keep alleged inconsistent statements in check while preserving a party's option to have its day in court. The most obvious of these lesser remedies is *to allow the opposing party to impeach at trial* the party that has made the inconsistent statement. Judicial estoppel is only appropriate when that technique or other less forceful remedies are inadequate to protect the integrity of the judicial system.

*Id.* at 993 (emphasis added) (citation omitted).

On remand, the district court ruled Mitchell could not present evidence of Mr. Tagliapietra's bankruptcy in its opening statement or through the testimony of other witnesses, but allowed the evidence to be used for impeachment purposes. Nothing in our *VMR I* decision precluded Mitchell from using the evidence as "appropriate impeachment contemporaneous with [Mr. Tagliapietra's] testimony." The district court therefore did not exceed the scope of the mandate.

## 2. VMR Waived Any Argument that the District Court Erred in Allowing Mitchell to Cross-Examine Mr. Tagliapietra on the Bankruptcy Valuation

To the extent VMR contends the district court exceeded its discretion in admitting the bankruptcy valuation evidence, the argument is waived. "Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Ohler v. United States*, 529 U.S. 753, 755 (2000). This is true even if the party introduces the evidence only to limit its impact on cross-examination. *Id.* In *Ohler*, the defendant brought a motion in limine to exclude evidence of her prior conviction. When

10

the district court denied the motion, the defense introduced the prior conviction evidence during the defendant's direct examination in an effort to minimize the impact of the government's "possible elicitation of the conviction on cross-examination." *Id.* at 758. The defendant was convicted and then challenged the district court's in limine ruling on appeal. The Ninth Circuit affirmed, concluding the defendant had waived the objection by introducing the evidence on direct examination. On certiorari, the Supreme Court agreed. The Court held that a defendant cannot gain an advantage on direct examination "by offering the conviction herself (and thereby removing the sting) and still preserve its admission as a claim of error on appeal." *Id.* at 758.

Under *Ohler*, the party introducing the evidence waives—rather than forfeits—any objection to its admission, meaning "we do not consider the claim at all, even under the forgiving plain-error standard." *Hancock v. Trammell*, 798 F.3d 1002, 1011 n.3 (10th Cir. 2015). We apply the waiver doctrine "where a party has invited the error that it now seeks to challenge, or where a party attempts to reassert an argument that it previously raised and abandoned below." *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008).[5]

---

[5] Although *Ohler* was a criminal case, the same waiver rule applies in civil proceedings. *See United States v. Wagoner Cty. Real Estate*, 278 F.3d 1091, 1098–99 (10th Cir. 2002) (applying *Ohler* in a civil proceeding where a party challenged the admission of impeachment evidence of her prior conviction); *Clarett v. Roberts*, 657 F.3d 664, 670–71 (7th Cir. 2011) ("The logic of *Ohler* applies with equal force in both criminal and civil cases. The tactical nature of each party's decisions is the same; indeed, the stakes are higher in a criminal case, and still the Supreme Court found waiver."); *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 904 (8th Cir. 2006) (holding that "Dr. Pepper waived a challenge to the admission" of the evidence on appeal after it introduced the evidence on direct examination of its witness).

On direct examination in its case-in-chief, VMR introduced both the fact of the bankruptcy and Mr. Tagliapietra's valuation of VMR's shares at zero in that proceeding. VMR then provided Mr. Tagliapietra an opportunity to explain to the jury why the bankruptcy valuation of zero was consistent with the complaint in this litigation seeking over $4 million in unpaid royalties. VMR made the strategic choice to introduce this evidence in an attempt to reduce its negative impact. And it did so despite the district court's ruling that Mitchell could not raise the evidence in the first instance, but could use it only for impeachment.

VMR "cannot avoid the consequence of its own trial tactic by arguing it was forced" by the district court's in limine ruling "to introduce the evidence during the direct examination . . . to diminish the prejudice" that might result from impeachment evidence about the bankruptcy. *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 904 (8th Cir. 2006); *see also Ohler*, 529 U.S. at 758. Because VMR "preemptively elicited" this testimony on direct examination, it cannot now appeal either the district court's ruling in limine or Mitchell's impeachment of the direct testimony. *Hancock*, 798 F.3d at 1011 n.3.

**B.** ***The District Court Did Not Abuse Its Discretion by Rejecting the Last Sentence of VMR's Proposed Jury Instruction on 30(b)(6) Testimony***

VMR next challenges the district court's jury instruction on Rule 30(b)(6) witnesses. Federal Rule of Civil Procedure 30(b)(6) provides a mechanism through which a party can depose an artificial business entity. Under Rule 30(b)(6), the entity named in the deposition notice must "designate one or more officers, directors, or managing

agents . . . to testify on its behalf." Fed. R. Civ. P. 30(b)(6). The designee is required to "testify about information known or reasonably available to the organization." *Id.*

Mitchell designated Jim Lindner, its former CEO, as its designee in response to VMR's Rule 30(b)(6) notice of Mitchell. At his 30(b)(6) deposition, Mr. Lindner stated he would not have allowed his employees to "use" the VMR work product in developing its own product because that would be a breach of his business ethics. After VMR introduced Mr. Lindner's videotaped deposition at trial, Mitchell gave Mr. Lindner the opportunity to explain that when he said "use" in his deposition, he meant Mitchell employees were prohibited from "copying any of the [VMR] code."

VMR contends the jury should have been instructed to reject Mr. Lindner's trial testimony as inconsistent with his deposition testimony under Rule 30(b)(6). Specifically, VMR proposed a jury instruction that included the statement: "The corporation cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." The district court refused to include the quoted sentence, but otherwise instructed the jury in accordance with VMR's proposed instruction.[6]

VMR frames this as legal error subject to de novo review. As discussed, "[w]e review de novo whether, as a whole, the district court's jury instructions correctly stated

---

[6] VMR's proposed instruction stated, with our emphasis:

In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation. The Rule 30(b)(6) designee does not give his personal opinion. Rather, he presents the corporation's "position" on the topic. The designee testifies on behalf of the corporation and thus holds it accountable. <u>The corporation cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative.</u>

13

the governing law and provided the jury with an ample understanding of the issues and applicable standards." *Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th Cir. 2009) (internal quotation marks omitted). But we review a district court's decision "on whether to give a particular instruction for abuse of discretion." *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1248 (10th Cir. 1998). "[W]e will find an abuse of discretion if the challenged instruction incorrectly states the governing law. Furthermore, '[n]o particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law.'" *Id.* (alteration in original) (citations omitted); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990) ("[S]o long as the charge as a whole adequately states the law, the refusal to give a particular requested instruction is not an abuse of discretion.").

Here, the district court did not abuse its discretion in rejecting the last sentence of VMR's Rule 30(b)(6) instruction because the omitted sentence was an incorrect statement of governing law.

1.  **The Proposed Sentence Incorrectly Stated the Law**

VMR claims 30(b)(6) testimony should be treated as a judicial admission against the corporation and not a standard evidentiary admission subject to impeachment and clarification. The final sentence from its proposed jury instruction supports this view: "The corporation cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." VMR argues this sentence is "a direct quote from Moore's Federal Practice." *See* 7 James William Moore et al., *Moore's Federal Practice—Civil* § 30.25[3].

14

Although Moore's Federal Practice does say that "a corporation *generally* cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative," *id.* (emphasis added), it clarifies that this rule is limited to the summary judgment context, *id* § 30.25[3] n. 15.2 ("Conflicts with Rule 30(b)(6) testimony generally will not defeat summary judgment,"); *see also id.* § 30.25 ("[C]ourts have ruled that because a Rule 30(b)(6) designee testifies on behalf of the entity, the entity is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition or contains information that the Rule 30(b)(6) deponent professed not to know.").

Moreover, the cases Moore's cites as support for this proposition make clear that it is limited to the context in which an affidavit conflicts with the Rule 30(b)(6) deposition *without good reason. See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 35 (2d Cir. 2015) ("Some deponents will . . . try to abuse Rule 30(b)(6) by intentionally offering misleading or incomplete responses, then seeking to 'correct' them by offering new evidence after discovery."); *MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 829 (W.D. Wash. 2014) ("[A] party cannot rebut the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal."); *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000), *aff'd*, 31 F. App'x 151 (5th Cir. 2001) (striking an affidavit that "directly contradict[ed]" the party's Rule 30(b)(6) deposition when the party did not provide a "reasonable explanation" for the inconsistency).VMR's selective quotation from Moore's Federal Practice does not accurately present the treatise's position on this issue.

For example, VMR omits language from the same section of Moore's Federal Practice, which explains that

> the *testimony of a Rule 30(b)(6) deponent does not absolutely bind the corporation in the sense of a judicial admission*, but rather is evidence that, like any other deposition testimony, *can be contradicted and used for impeachment purposes*. The Rule 30(b)(6) testimony also is not binding against the organization in the sense that the testimony can be corrected, explained and supplemented, and the entity is not "irrevocably" bound to what the fairly prepared and candid designated deponent happens to remember during the testimony.

*Id.* (emphasis added). VMR attempts to pluck portions of the treatise's discussion of Rule 30(b)(6), while wholly omitting sections that expressly refute its argument.

The Tenth Circuit has "not addressed whether the testimony of a Rule 30(b)(6) representative qualifies as a judicial or evidentiary admission." *Templeton v. Catlin Specialty Ins. Co.*, 612 F. App'x 940, 959 n. 19 (10th Cir. 2015) (unpublished) (declining to decide the issue because the subject of the testimony was actually a question of law and therefore the 30(b)(6) witness's testimony did "not create a triable issue of fact"). We have noted, however, that like Moore's Federal Practice treatise, the "majority of courts to reach the issue . . . treat the testimony of a Rule 30(b)(6) representative as merely an evidentiary admission, and do not give the testimony conclusive effect." *Id.*; *see Keepers, Inc.*, 807 F.3d 24, 34–35 ("[The plaintiff] rightly notes that an organization's deposition testimony is 'binding' in the sense that whatever its deponent says can be used against the organization. But Rule 30(b)(6) testimony is not 'binding' in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements." (footnote omitted)); *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001)

("[T]estimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." (quoting *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000))); *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 811 (8th Cir. 2013) ("A 30(b)(6) witness's legal conclusions are not binding on the party who designated him, and a designee's testimony likely does not bind [its employer] in the sense of a judicial admission." (citation omitted)).

We agree with our sister circuits that the testimony of a Rule 30(b)(6) witness is merely an evidentiary admission, rather than a judicial admission. Accordingly, the jury instruction given correctly states the governing law, and the district court did not abuse its discretion in omitting VMR's proposed final sentence. *Suntar Roofing, Inc.*, 897 F.2d at 473.

## IV.     CONCLUSION

The district court did not violate the law of the case doctrine by allowing Mitchell to impeach Mr. Tagliapietra with his bankruptcy valuation of VMR, and VMR waived any objection to the district court's ruling in limine and the use of the evidence during cross-examination because VMR first introduced the evidence on direct examination of Mr. Tagliapietra. The district court did not abuse its discretion in rejecting the last sentence of VMR's proposed Rule 30(b)(6) jury instruction. We therefore AFFIRM.

17