ORDER AND JUDGMENT *
TYMKOVICH, Chief Judge.
Reson and Shaun Woods submitted a single loan application to the First National Bank of Durango to finance a construction project. The application envisioned (1) a $480,000 construction loan for 18 months, and (2) a $482,000 First National in-house mortgage, known as a permanent take-out loan. Shortly thereafter, the Woodses closed on the $480,000 construction loan. They were tentatively approved for the permanent take-out loan subject to re-verification of all loan parameters. More than a year after their initial application, the Woodses re-applied for the permanent take-out loan to re-finance the construction loan. First National denied the loan and issued a written adverse action notice informing the Woodses of the decision. The Woodses filed a complaint alleging First National failed to comply with notice requirements set forth in the Equal Credit Opportunity Act (ECOA) when it failed to send an adverse action notice closer to the date of the Woodses’ initial loan application.
The case went to trial, where the jury found in favor of First National’s claim that it had complied with ECOA’s notice requirements. The district court thus entered judgment against the Woodses and in favor of First National. The Woodses then filed a motion to alter or amend judgment, or in the alternative, for a new trial, arguing it was impossible to reconcile the jury verdict with the uncontroverted evidence presented at trial. The district court denied the motion.
The Woodses appeal, challenging both the underlying jury verdict and an eviden-tiary ruling by the district court concerning a handwritten reverification approval condition on an internal First National credit approval memorandum for the permanent take-out loan. First National cross-appeals from the district court’s denial of its post-trial motion for attorneys’ fees.
*687 Exercising jurisdiction under 28 U.S.C. § 1291, we affirm on all issues.
I. Background
On March 6, 2008, the Woodses signed and submitted a single loan application to First National, seeking (1) a $480,000 construction loan for 18 months, and (2) a $482,000 First National permanent takeout loan.[1] A loan officer signed the application on March 10, 2008, and the application was transferred to the First National Loan Committee for consideration.
According to an internal First National credit approval memorandum, the Woods-es were approved for the construction loan on April 8, 2008, on the condition that no more than $340,000 would be funded until closing on the sale of a specified property the Woodses owned. The parties closed on the construction loan on April 15, 2008, at which time they executed documentation, including a side letter agreement confirming the approval condition. According to another internal bank memorandum, on April 8 the Woodses were also approved for a permanent take-out loan subject to “re-verification of all loan parameters including income, assets, credit, appraisal (final).” App. 687. This condition was handwritten on the memorandum form.
After the April 15, 2008 closing on the construction loan, there were several communications between the parties, including:
• an e-mail sent on March 16, 2009 suggesting First National was unable to pursue the mortgage-loan request at the time and encouraging the Woodses to seek other options;
• a letter sent on April 3, 2009 suggesting First National would not be able to provide permanent financing for the maturing construction loan, encouraging the Woodses to seek other options, and asking for the Woodses’ approval to release information requested by a different mortgage company;
• an e-mail sent on April 6, 2009 following up on the April 3 letter;
• a letter sent on May 29, 2009, acknowledging the Woodses’ ongoing search for a permanent mortgage; and
• letters sent on June 30, July 17, and August 26, 2009 asking how the Woodses were progressing in securing a long-term mortgage.
On September 16, 2009, the Woodses signed and submitted another loan application to First National for a permanent take-out loan. This application became complete on October 10, 2009 when the Woodses submitted required loan disclosure documents. On October 29, 2009, First National sent an adverse action notice to the Woodses denying the application.
In 2012, the Woodses filed a complaint alleging they had submitted a complete application for permanent take-out financing with their initial March 2008 application, and that First National had failed to issue an ECOA-compliant notification of its decision to deny that loan. Before trial, the Woodses filed a motion in limine seeking *688 to exclude the handwritten reverification approval condition on First National’s credit approval memorandum for the permanent take-out loan, which required re-verification of all loan parameters before approval. The Woodses also sought to exclude any mention of the reverification condition at trial. The district court denied the motion.
At trial, the Woodses introduced the credit approval memorandum in unredact-ed form and elicited testimony about the handwritten approval condition. But when First National called the loan officer to testify about her discussion with the Woodses at the construction loan closing, the Woodses objected. Under the Colorado Statute of Frauds, the Woodses argued, an approval condition is a credit agreement which can only be enforced if it is in a writing signed by the person against whom enforcement is sought. The district court overruled the objection, but instructed the loan officer to limit her answer to what was on the credit approval memorandum. The loan officer then testified that approval of the permanent loan was subject to reverification, and that she had informed the Woodses about this condition at the construction loan closing.
The jury ultimately found in favor of First National. In its completed verdict form, the jury found (1) the Woodses had submitted a completed application to First National for credit seeking a permanent take-out loan; (2) First National had taken an adverse action; and (3) First National had not failed to notify the Woodses in writing in conformity with the EOOA. The district court entered judgment against the Woodses and in favor of First National on the ECOA claim. The Woodses filed a timely Rule 59 motion to alter or amend judgment or, in the alternative, for a new trial, arguing it was impossible to reconcile the jury verdict with the uncontroverted evidence presented at trial. The district court denied the motion. The district court also denied First National’s timely post-trial motion for attorneys’ fees.
II. Analysis
The Woodses challenge the district court’s denial of their motion for post-trial relief and its admission of evidence concerning the reverification approval condition for the permanent take-out loan. First National challenges the district court’s denial of its motion for attorneys’ fees. For the reasons below, we affirm the district court in full.

A. The Woodses’ Motion for Post-Trial Relief

The Woodses contend the district court abused its discretion in denying their motion to alter or amend the judgment or for a new trial, arguing the jury’s conclusion that First National complied with ECOA’s notice requirements was contrary to the weight of the evidence. We disagree for two reasons: a motion to alter or amend is not available for claims that a verdict was against the weight of the evidence, and the jury’s findings were not overwhelmingly against the weight of the evidence introduced at trial.
“We review denials of Rule 59(a) and Rule 59(e) motions for abuse of discretion.” Hill v. J.B. Hunt Transp., Inc., 815 F.3d 651, 657 (10th Cir. 2016). “A trial court’s decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.” Headwaters Res., Inc. v. Ill. Union Ins. Co., 770 F.3d 885, 899 (10th Cir. 2014) (quoting Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997)).
As an initial matter, the Woodses’ claim that the district court erred in deny *689 ing their motion to alter or amend the judgment must fail. A court may grant a Rule 59(e) motion to alter or amend a judgment “only to correct manifest errors of law or to present newly discovered evidence.” Loughridge v. Chiles Power Supply Co., 431 F.3d 1268, 1275 (10th Cir. 2005) (quoting Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir.1997) (quotation marks omitted)). We have previously held that a Rule 59(e) motion cannot be used to address the weight or sufficiency of the evidence. See Elm Ridge Exploration Co. v. Engle, 721 F.3d 1199, 1216 (10th Cir. 2013) (citing Velazquez v. Figueroa-Gomez, 996 F.2d 425, 427 n.1 (1st Cir. 1993)). Accordingly, the district court did not abuse its discretion in denying the Woods-es’ motion to alter or amend the judgment.
That leaves us with the Woodses’ Rule 59(a) motion for a new trial. If a Rule 59(a) motion “asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence.” M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 762 (10th Cir. 2009) (quoting Anaeme v. Diagnostek, 164 F.3d 1275, 1284 (10th Cir. 1999) (quotation marks omitted)).
The jury verdict found that First National was not liable under the ECOA, which requires creditors to notify applicants of any action taken on a completed application for credit within thirty days of receipt of the completed application. 15 U.S.C. § 1691(d)(1). The regulations define an application as “an oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested.” 12 C.F.R. § 202.9(f). When a creditor takes an adverse action[2] against an applicant, the applicant is entitled to a written statement of reasons or a written notification of the applicant’s right to obtain a written statement of reasons. 15 U.S.C. § 1691(d)(2). The statement of reasons must contain “the specific reasons for the adverse action taken.” 15 U.S.C. § 1691(d)(3).
Based on the evidence introduced at trial, a reasonable jury could have concluded First National complied with ECOA’s notification requirements. The jury heard evidence of two different loan applications for credit. The first was dated March 6, 2008, and the second was dated September 16, 2009 and finalized on October 10, 2009. First National sent an ECOA-compliant adverse action notice to the Woodses on October 29, 2009. In its completed verdict form, the jury was not asked to (and thus did not) specify to which application it was referring. But the jury could have been referring to First National’s actions taken on the second loan application, and not to any actions taken regarding the March 6 loan application. In light of this possibility, we cannot say the jury’s conclusion was overwhelmingly contrary to the weight of the evidence.
To be sure, there was evidence in the record suggesting First National decided to deny the Woodses’ initial application for the permanent take-out loan as early as August 2008 yet failed to issue an ECOA-compliant adverse action notice within thirty days. Several First National employees testified that a bank employee made the decision not to extend permanent takeout financing at that time. But the jury was never asked to decide when the adverse action occurred, nor was it asked to specify which loan application was the sub *690 ject of that adverse action. Perhaps if it had, then the Woodses might have been entitled to a new trial. But as written, the completed verdict form is not overwhelmingly against tjie weight of the evidence presented at trial. Perhaps the jury decided any decision in August 2008 was not an adverse action within the meaning of ECOA because the First National employee did not have final decision-making authority. Or, in light of the reverification condition on the credit approval memorandum for the permanent take-out loan, the jury could have reasonably concluded First National did not consider the Woodses’ application for the take-out loan complete in August 2008.
In sum, a reasonable jury could have found any decision made in August 2008 was not an adverse action triggering ECOA’s notice requirements, either because the Woodses’ application was not complete as to the permanent take-out loan or because the First National employee’s decision to deny the loan was not final. Put differently, although the jury could have found First National took an adverse action on the Woodses’ March 6 application in August 2008, the evidence also supports the opposite conclusion. As the district court stated when it denied the Woodses’ motion for a new trial, the jury was presented with two different narratives at trial. TJiere was evidence supporting both versions of the case. Although a different jury might have accepted the Woodses’ narrative instead, this possibility does not require a new trial.
Accordingly, we affirm the district court’s denial of the Woodses’ motion for post-trial relief.

B. Admission of Testimony About the Reverifícation Approval Condition

The Woodses next argue the district court erred in admitting evidence concerning the reverification approval condition on the credit approval memorandum, because the condition was not in a writing signed by the Woodses. We reject this argument, because the Woodses invited any error that occurred.
“We review a trial court’s decision to admit evidence for abuse of discretion.” Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co., 711 F.3d 1165, 1170 (10th Cir. 2013). “A party may claim error in a ruling to admit ... evidence only if the error affects a substantial right of the party and ... a party, on the record” both (1) timely objects or moves to strike, and (2) states the specific ground for doing so. See Fed. R. Evid. 103(a).
“Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted.” Vehicle Mkt. Res., Inc., v. Mitchell Int'l, Inc., 839 F.3d 1251, 1257 (10th Cir. 2016). That is, “the party introducing the evidence waives—rather than forfeits—any objection to its admission, meaning ‘we do not consider the claim at all, even under the forgiving plain-error standard.’” Id. at 1258 (quoting Hancock v. Trammell, 798 F.3d 1002, 1011 n.3 (10th Cir. 2015), cert. denied sub nom. Hancock v. Duckworth, - U.S. -, 137 S.Ct. 53, 196 L.Ed.2d 56 (2016)). We treat the objection as waived, because the party “invited the error that it now seeks to challenge.” Vehicle Mkt. Res., 839 F.3d at 1258 (quoting United States v. Zubia-Torres, 550 F.3d 1202, 1205 (10th Cir. 2008)).
The Woodses admitted the unredacted credit approval memorandum—including the handwritten reverification approval condition—into evidence at trial. They also asked several witnesses to testify about the meaning of the reverifieation condition and its origin. The Woodses then objected when First National called the loan officer to testify about her conversations with the *691 Woodses regarding the condition. But the Woodses had already questioned another witness about whether the Woodses had been made aware of the approval condition. On appeal, then, the Woodses are challenging a condition they created: they introduced the unredacted credit approval memorandum into evidence and made the memorandum and reverification approval condition central issues at trial. The Woodses have therefore waived'any objection to the admission of evidence concerning the reverification approval condition on the credit approval memorandum. For that reason, we need not reach the parties’ arguments about the Colorado Credit Agreement Statute of Frauds.
But even if we narrowly construed the Woodses’ challenge as an objection to the loan officer’s testimony about the reverifi-cation condition, their claim would still fail. The district court instructed the loan officer to limit her answer in a manner consistent with the unredacted credit approval memorandum. And although the Woodses contend they were “compelled” to introduce the memorandum without contemporaneous objection, we have previously rejected similar arguments. See, e.g., Vehicle Mkt. Res., 839 F.3d at 1258 (“[A party] ‘cannot avoid the consequence of its own trial tactic by arguing it was forced’ by the district court’s in limine ruling ‘to introduce the evidence (quoting Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc., 439 F.3d 894, 904 (8th Cir. 2006)). In any event, the district court’s pre-trial ruling on the motion in limine did not prevent the Woodses from objecting contemporaneously at trial. Indeed, the court expressly invited the parties to renew their objections to the challenged evidence during trial, and the Woodses failed to do so.
Accordingly, we affirm the district court’s admission of evidence regarding the reverification approval condition in the credit approval memorandum.

C. First National’s Post-Trial Motion for Attorneys’ Fees

In its cross-appeal, First National argues it is entitled to attorneys’ fees. Specifically, First National claims the costs and expenses it incurred in defending the present ECOA action were incurred in connection .with the enforcement of the parties’ construction loan agreement, which contains an attorneys’ fees and expenses provision. But First National reads this provision too broadly. We therefore affirm the district court’s denial of First National’s motion.
“We review for abuse of discretion the district court’s denial of a motion for attorneys’ fees under Federal Rule of Civil Procedure 54(d)(2).” Vanguard Envtl., Inc. v. Kerin, 528 F.3d 756, 758 (10th Cir. 2008). “Subsidiary factual findings will only be reversed if clearly erroneous.” Iqbal v. Golf Course Superintendents Ass’n of Am., 900 F.2d 227, 228 (10th Cir. 1990).
Generally, a party seeking attorneys’ fees under Federal Rule of Civil Procedure 54(d)(2) must specify the statute, rule, or other grounds entitling the party to the award. See Fed. R. Civ. P. 54(d)(2); Vanguard Envtl., 528 F.3d at 758. Here, First National seeks attorneys’ fees under the construction loan agreement. According to the attorneys’ fees and expenses provision in the construction loan- agreement, “[borrower agrees to pay all of Lender’s reasonable costs and expenses, including Lender’s reasonable attorneys’ fees and Lender’s legal expenses, incurred in connection with the enforcement of this Agreement.” Supp. App. 127. But the district court denied First National’s motion because it concluded the provision in the construction loan agreement did not entitle First National to fees and expenses in this *692 litigation, which- did not involve enforcing the terms of the construction loan agreement.
We agree with the district court. First National incurred its litigation expenses defending against the Woodses’ ECOA claim, which concerned a different loan and alleged agreement (i.e., for the permanent take-out loan), and not enforcement of the terms of the construction loan agreement. In an attempt to justify its broad interpretation of the fees provision in the construction loan agreement, First National argues the provision is not limited to direct claims for enforcement of the construction loan agreement, but rather extends broadly to any fees incurred in connection with such enforcement. First National thus contends it would not have been successful in defending the ECOA claim unless the provisions of the construction loan agreement were enforced against the Woodses. In other words, because First National asserted the construction loan agreement as a defense, this case is covered by the fees provision. But enforcing the construction loan agreement was not necessary for First National to prevail. The construction loan agreement was only tangentially relevant as background to the main issue in the litigation, which involved the permanent take-out loan. First National’s attorneys’ fees and expenses therefore were not incurred in connection with the enforcement of the construction loan agreement.
III. Conclusion
For these reasons, we AFFIRM the judgment of the district court in full.

 This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

. First National argues the jury could have reasonably found the Woodses did not submit an application for the permanent take-out loan in March 2008 when they submitted their application for the construction loan. We disagree. The weight of the evidence introduced at trial—including internal bank documents and testimony by First National employees—shows that First National considered the March 2008 application as one for both a construction loan and a permanent take-out loan. Whether that application was complete as to the permanent take-out loan, however, is a separate issue.

. ECOA defines an adverse action as “a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.” 15 U.S.C. § 1691(d)(6).