## OHLER *v.* UNITED STATES

No. 98–9828.   Argued March 20, 2000—Decided May 22, 2000

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-NOR, SCALIA, KENNEDY, and THOMAS, JJ., joined. SOUTER, J., filed a dissenting opinion, in which STEVENS, GINSBURG, and BREYER, JJ., joined, *post*, p. 760.

*Benjamin L. Coleman,* by appointment of the Court, 528 U. S. 984, argued the cause for petitioner. With him on the briefs was *Mario G. Conte.*

*Barbara McDowell* argued the cause for the United States. With her on the brief were *Solicitor General Waxman, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben,* and *Jonathan L. Marcus.**

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner, Maria Ohler, was arrested and charged with importation of marijuana and possession of marijuana with the intent to distribute. The District Court granted the Government's motion *in limine* seeking to admit evidence of her prior felony conviction as impeachment evidence under Federal Rule of Evidence 609(a)(1). Ohler testified at trial and admitted on direct examination that she had been convicted of possession of methamphetamine in 1993. The jury convicted her of both counts, and the Court of Appeals for the Ninth Circuit affirmed. We agree with the Court of Appeals that Ohler may not challenge the *in limine* ruling of the District Court on appeal.

Maria Ohler drove a van from Mexico to California in July 1997. As she passed through the San Ysidro Port of Entry, a customs inspector noticed that someone had tampered with one of the van's interior panels. Inspectors searched the van and discovered approximately 81 pounds of marijuana. Ohler was arrested and charged with importation of marijuana and possession of marijuana with the intent to

---

*Jody Manier Kris* and *Lisa Kemler* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging reversal.

distribute. Before trial, the Government filed motions *in limine* seeking to admit Ohler's prior felony conviction as character evidence under Federal Rule of Evidence 404(b) and as impeachment evidence under Rule 609(a)(1). The District Court denied the motion to admit the conviction as character evidence, but reserved ruling on whether the conviction could be used for impeachment purposes. On the first day of trial, the District Court ruled that if Ohler testified, evidence of her prior conviction would be admissible under Rule 609(a)(1). App. 97–98. She testified in her own defense, denying any knowledge of the marijuana. She also admitted on direct examination that she had been convicted of possession of methamphetamine in 1993. The jury found Ohler guilty of both counts, and she was sentenced to 30 months in prison and 3 years' supervised release. *Id.*, at 140–141.

On appeal, Ohler challenged the District Court's *in limine* ruling allowing the Government to use her prior conviction for impeachment purposes. The Court of Appeals for the Ninth Circuit affirmed, holding that Ohler waived her objection by introducing evidence of the conviction during her direct examination. 169 F. 3d 1200 (1999). We granted certiorari to resolve a conflict among the Circuits regarding whether appellate review of an *in limine* ruling is available in this situation. 528 U. S. 950 (1999). See *United States* v. *Fisher*, 106 F. 3d 622 (CA5 1997) (allowing review); *United States* v. *Smiley*, 997 F. 2d 475 (CA8 1993) (holding objection waived). We affirm.

Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted. See 1 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 103.14, p. 103–30 (2d ed. 2000). Cf. 1 J. Strong, McCormick on Evidence § 55, p. 246 (5th ed. 1999) ("If a party who has objected to evidence of a certain fact himself produces evidence from his own witness of the same fact, he has waived his objection"). Ohler seeks to avoid the consequences of

this well-established commonsense principle by invoking Rules 103 and 609 of the Federal Rules of Evidence. But neither of these Rules addresses the question at issue here. Rule 103 sets forth the unremarkable propositions that a party must make a timely objection to a ruling admitting evidence and that a party cannot challenge an evidentiary ruling unless it affects a substantial right.[1] The Rule does not purport to determine when a party waives a prior objection, and it is silent with respect to the effect of introducing evidence on direct examination, and later assigning its admission as error on appeal.

Rule 609(a) is equally unavailing for Ohler; it merely identifies the situations in which a witness' prior conviction may be admitted for impeachment purposes.[2] The Rule originally provided that admissible prior conviction evidence could be elicited from the defendant or established by public record during cross-examination, but it was amended in 1990 to clarify that the evidence could also be introduced on direct examination. According to Ohler, it follows from this amendment that a party does not waive her objection to the *in limine* ruling by introducing the evidence herself. However, like Rule 103, Rule 609(a) simply does not address this issue. There is no question that the Rule authorizes

---

[1] Federal Rule of Evidence 103(a): "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) . . . In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . ."

[2] Rule 609(a): "For the purpose of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused . . . ."

the eliciting of a prior conviction on direct examination, but it does no more than that.

Next, Ohler argues that it would be unfair to apply such a waiver rule in this situation because it compels a defendant to forgo the tactical advantage of pre-emptively introducing the conviction in order to appeal the *in limine* ruling. She argues that if a defendant is forced to wait for evidence of the conviction to be introduced on cross-examination, the jury will believe that the defendant is less credible because she was trying to conceal the conviction. The Government disputes that the defendant is unduly disadvantaged by waiting for the prosecution to introduce the conviction on cross-examination. First, the Government argues that it is debatable whether jurors actually perceive a defendant to be more credible if she introduces a conviction herself. Brief for United States 28. Second, even if jurors do consider the defendant more credible, the Government suggests that it is an unwarranted advantage because the jury does not realize that the defendant disclosed the conviction only after failing to persuade the court to exclude it. *Ibid.*

Whatever the merits of these contentions, they tend to obscure the fact that both the Government and the defendant in a criminal trial must make choices as the trial progresses. For example, the defendant must decide whether or not to take the stand in her own behalf. If she has an innocent or mitigating explanation for evidence that might otherwise incriminate, acquittal may be more likely if she takes the stand. Here, for example, Ohler testified that she had no knowledge of the marijuana discovered in the van, that the van had been taken to Mexico without her permission, and that she had gone there simply to retrieve the van. But once the defendant testifies, she is subject to cross-examination, including impeachment by prior convictions, and the decision to take the stand may prove damaging instead of helpful. A defendant has a further choice to make if she decides to testify, notwithstanding a prior conviction.

The defendant must choose whether to introduce the conviction on direct examination and remove the sting or to take her chances with the prosecutor's possible elicitation of the conviction on cross-examination.

The Government, too, in a case such as this, must make a choice. If the defendant testifies, it must choose whether or not to impeach her by use of her prior conviction. Here the trial judge had indicated he would allow its use,[3] but the Government still had to consider whether its use might be deemed reversible error on appeal. This choice is often based on the Government's appraisal of the apparent effect of the defendant's testimony. If she has offered a plausible, innocent explanation of the evidence against her, it will be inclined to use the prior conviction; if not, it may decide not to risk possible reversal on appeal from its use.

Due to the structure of trial, the Government has one inherent advantage in these competing trial strategies. Cross-examination comes after direct examination, and therefore the Government need not make its choice until the defendant has elected whether or not to take the stand in her own behalf and after the Government has heard the defendant testify.

Ohler's submission would deny to the Government its usual right to decide, after she testifies, whether or not to use her prior conviction against her. She seeks to short circuit that decisional process by offering the conviction herself (and thereby removing the sting) and still preserve its admission as a claim of error on appeal.

---

[3] The District Court ruled on the first day of trial that Ohler's prior conviction would be admissible for impeachment purposes, and the court likely would have abided by that ruling at trial. However, in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial. See Luce v. United States, 469 U. S. 38, 41–42 (1984). Ohler's position, therefore, would deprive the trial court of the opportunity to change its mind after hearing all of the defendant's testimony.

But here Ohler runs into the position taken by the Court in a similar, but not identical, situation in *Luce* v. *United States,* 469 U. S. 38 (1984), that "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative." *Id.,* at 41. Only when the Government exercises its option to elicit the testimony is an appellate court confronted with a case where, under the normal rules of trial, the defendant can claim the denial of a substantial right if in fact the district court's *in limine* ruling proved to be erroneous. In our view, there is nothing "unfair," as Ohler puts it, about putting her to her choice in accordance with the normal rules of trial.

Finally, Ohler argues that applying this rule to her situation unconstitutionally burdens her right to testify. She relies on *Rock* v. *Arkansas,* 483 U. S. 44 (1987), where we held that a prohibition of hypnotically refreshed testimony interfered with the defendant's right to testify. But here the rule in question does not prevent Ohler from taking the stand and presenting any admissible testimony which she chooses. She is of course subject to cross-examination and subject to impeachment by the use of a prior conviction. In a sense, the use of these tactics by the Government may deter a defendant from taking the stand. But, as we said in *McGautha* v. *California,* 402 U. S. 183, 215 (1971):

> "It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination. . . . It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like. . . . Again, it is not thought inconsistent with the enlightened administration of criminal justice to require

the defendant to weigh such pros and cons in deciding whether to testify."

For these reasons, we conclude that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error.

The judgment of the Court of Appeals for the Ninth Circuit is therefore affirmed.

*It is so ordered.*

JUSTICE SOUTER, with whom JUSTICE STEVENS, JUSTICE GINSBURG, and JUSTICE BREYER join, dissenting.

The majority holds that a testifying defendant perforce waives the right to appeal an adverse *in limine* ruling admitting prior convictions for impeachment. The holding is without support in precedent, the rules of evidence, or the reasonable objectives of trial, and I respectfully dissent.

The only case of this Court that the majority claims as even tangential support for its waiver rule is *Luce* v. *United States,* 469 U. S. 38 (1984). *Ante,* at 759. We held there that a criminal defendant who remained off the stand could not appeal an *in limine* ruling to admit prior convictions as impeachment evidence under Federal Rule of Evidence 609(a). Since the defendant had not testified, he had never suffered the impeachment, and the question was whether he should be allowed to appeal the *in limine* ruling anyway, on the rationale that the threatened impeachment had discouraged the exercise of his right to defend by his own testimony. The answer turned on the practical realities of appellate review.

An appellate court can neither determine why a defendant refused to testify, nor compare the actual trial with the one that would have occurred if the accused had taken the stand. With unavoidable uncertainty about whether and how much the *in limine* ruling harmed the defendant, and whether it affected the trial at all, a rule allowing a silent defend-

ant to appeal would require courts either to attempt wholly speculative harmless-error analysis, or to grant new trials to some defendants who were not harmed by the ruling, and to some who never even intended to testify. In requiring testimony and actual impeachment before a defendant could appeal an *in limine* ruling to admit prior convictions, therefore, *Luce* did not derive a waiver rule from some general notion of fairness; it merely acknowledged the incapacity of an appellate court to assess the significance of the ruling for a defendant who remains silent.

This case is different, there being a factual record on which Ohler's claim can be reviewed. She testified, and there is no question that the *in limine* ruling controlled her counsel's decision to enquire about the earlier conviction; defense lawyers do not set out to impeach their own witnesses, much less their clients. Since analysis for harmless error is made no more difficult by the fact that the convictions came out on direct examination, not cross-examination, the case raises none of the practical difficulties on which *Luce* turned, and *Luce* does not dictate today's result.[1]

In fact, the majority's principal reliance is not on precedent but on the "commonsense" rule that "a party introducing evidence cannot complain on appeal that the evi-

---

[1] The *Luce* Court anticipated as much: "It is clear, of course, that had petitioner testified and been impeached by evidence of a prior conviction, the District Court's decision to admit the impeachment evidence would have been reviewable on appeal along with any other claims of error. The Court of Appeals would then have had a complete record detailing the nature of petitioner's testimony, the scope of the cross-examination, and the possible impact of the impeachment on the jury's verdict." 469 U. S., at 41. There are, of course, practical issues that may arise in these cases; for example, the trial court may feel unable to render a final and definitive *in limine* ruling. The majority does not focus on these potential difficulties, and neither do I, though some lower courts have addressed them. See, *e. g., Wilson* v. *Williams,* 182 F. 3d 562 (CA7 1999) (en banc). For the purposes of this case, we need consider only the circumstance in which a district court makes a ruling that is plainly final.

dence was erroneously admitted." *Ante,* at 755. But this is no more support for today's holding than *Luce* is, for the common sense that approves the rule also limits its reach to a point well short of this case. The general rule makes sense, first, when a party who has freely chosen to introduce evidence of a particular fact later sees his opponent's evidence of the same fact erroneously admitted. He suffers no prejudice. See *Mercer* v. *Theriot,* 377 U. S. 152, 154 (1964) *(per curiam);* 21 C. Wright & K. Graham, Federal Practice and Procedure § 5039, p. 203 (1977). The rule makes sense, second, when the objecting party takes inconsistent positions, first requesting admission and then assigning error to the admission of precisely the same evidence at his opponent's behest. "The party should not be permitted 'to blow hot and cold' in this way." 1 J. Strong, McCormick on Evidence § 55, p. 246, n. 14 (5th ed. 1999).

Neither of these reasons applies when (as here) the defendant has opposed admission of the evidence and introduced it herself only to mitigate its effect in the hands of her adversary. Such a case falls beyond the scope of the general principle, and the scholarship almost uniformly treats it as exceptional. See, *e. g.,* 1 J. Wigmore, Evidence § 18, p. 836 (P. Tillers rev. 1983) ("[A] party who has made an unsuccessful motion in limine to exclude evidence that he expects the proponent to offer may be able to first offer that same evidence without waiving his claim of error"); M. Graham, Handbook of Federal Evidence § 103.4, p. 17 (1981) ("However, the party may . . . himself bring out evidence ruled admissible over his objection to minimize its effect without it constituting a waiver of his objection"); 1 McCormick, *supra,* § 55, at 246 ("[W]hen [a party's] objection is made and overruled, he is entitled to treat this ruling as the 'law of the trial' and to explain or rebut, if he can, the evidence admitted over his protest"); D. Louisell & C. Mueller, Federal Evidence § 11, p. 65 (1977) ("Having done his best by objecting, the adversary would be indeed ill treated if then

he was held to have thrown it all away by doing his best to protect his position by offering evidence of his own").[2]   The general thrust of the law of evidence, then, not only fails to support the majority's approach, but points rather clearly in the other direction.

With neither precedent nor principle to support its chosen rule, the majority is reduced to saying that "there is nothing 'unfair' . . . about putting petitioner to her choice in accordance with the normal rules of trial."[3]   *Ante*, at 759. Things are not this simple, however.

Any claim of a new rule's fairness under normal trial conditions will have to stand or fall on how well the rule would serve the objects that trials in general, and the Rules of Evidence in particular, are designed to achieve.   Thus the provisions of Federal Rule of Evidence 102, that "[t]hese rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."   A judge's job, accordingly, is to curb the tactics of the trial battle in favor of weighing evidence calmly and getting to the most sensible understanding of whatever gave rise to the controversy before the court.   The question is not which side gains a tactical advantage, but which rule assists in uncovering the truth.   Today's new rule can make no such claim.

---

[2] The point on which the analysis of the cited treatises turns, it should be clear, is not which party first introduces the evidence, but rather which party seeks introduction and which exclusion.   A defense lawyer who elicits testimony about prior convictions on direct examination, having failed in an attempt to have them excluded, is plainly making a defensive use of the convictions; he has no desire to impeach his client.   The fact that it is the defense lawyer who first introduces the convictions, then, is irrelevant to the principle the majority invokes.

[3] For the reasons just given, this begs the question, which is whether the "normal rules of trial" apply beyond the normal circumstances for which they were devised.

Previously convicted witnesses may testify honestly, but some convictions raise more than the ordinary question about the witness's readiness to speak truthfully. A fact-finder who appreciates a heightened possibility of perjury will respond with heightened scrutiny, and when a defendant discloses prior convictions at the outset of her testimony, the jury will bear those convictions in mind as she testifies, and will scrutinize what she says more carefully. The purpose of Rule 609, in making some convictions admissible to impeach a witness's credibility, is thus fully served by a defendant's own testimony that the convictions occurred.

It is true that when convictions are revealed only on cross-examination, the revelation also warns the factfinder, but the timing of their disclosure may do more. The jury may feel that in testifying without saying anything about the convictions the defendant has meant to conceal them. The jury's assessment of the defendant's testimony may be affected not only by knowing that she has committed crimes in the past, but by blaming her for not being forthcoming when she seemingly could have been. Creating such an impression of current deceit by concealment is very much at odds with any purpose behind Rule 609, being obviously antithetical to dispassionate factfinding in support of a sound conclusion. The chance to create that impression is a tactical advantage for the Government, but only in the majority's dismissive sense of the term; it may affect the outcome of the trial, but only if it disserves the search for truth.

Allowing the defendant to introduce the convictions on direct examination thus tends to promote fairness of trial without depriving the Government of anything to which it is entitled. There is no reason to discourage the defendant from introducing the conviction herself, as the majority's waiver rule necessarily does.