NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0204n.06

No. 18-1955

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 24, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALVIN DAVIS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JEFFREY LARSON, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: GUY, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Alvin Davis appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Because the court correctly determined that petitioner presented no errors meriting relief, we affirm.

I.

A Michigan jury convicted petitioner of unlawful imprisonment, felonious assault, and possession of a firearm during the commission of a felony. *People v. Davis*, No. 300426, 2012 WL 882244, at *1 (Mich. Ct. App. Mar. 15, 2012) (per curiam). The Michigan Court of Appeals provided the following description of his offenses:

> [Davis] was convicted of assaulting and unlawfully imprisoning Kristopher Delbridge on May 25, 2009, in Detroit. . . . The prosecution's theory at trial was that [Davis], a supervisory deportation agent with the Department of Homeland Security ("DHS"), used his position as a federal agent to unlawfully obtain information involving a theft at his mother's Detroit home on May 20, 2009. Evidence at trial indicated that as Kristopher Delbridge was leaving a neighborhood

store, [Davis] exited his government-issued Chevy Tahoe SUV, approached Kristopher, drew his government-issued firearm, forced Kristopher to sit on the ground, and prohibited Kristopher from standing or leaving as he questioned him. During the episode, [Davis] demanded the location of the suspected thief. Kristopher denied any knowledge of the suspected thief's whereabouts, but used his cell phone to call the suspected thief's mother, gave the phone to [Davis], and [Davis] spoke to the mother. Unbeknownst to the parties, a portion of the episode was captured on the store's outside video surveillance camera.

*Id*.

Before trial, the prosecution sought to introduce evidence of Davis's prior misconduct as a homeland security officer. *See* Mich. R. Evid. 404(b)(1). The other-acts evidence related to a DHS investigation involving Zoha Madarani, a former immigration consultant to the State of Michigan, with whom defendant had been engaged in an on-going sexual relationship. The prosecution averred that it intended to tender evidence that, in 2003, Davis impermissibly processed a deferred inspection for an Iraqi client of Madarani named Mohsin Al-Uglah, due to Davis's relationship with Madarani. Al-Uglah's processing was impermissible because he had a pending charge for first-degree criminal sexual conduct in Minnesota, which disqualified him from admission to the country. And when he was investigated by DHS, the prosecution contended, he was untruthful, changed his story multiple times, and later admitted to lying under oath. Alternatively, and in the event the trial court rejected its motion to admit the other-acts evidence, the prosecution moved to admit Davis's prior inconsistent statements related to this DHS investigation. After argument on the motions, the trial court precluded the prosecution from presenting evidence related to the Al-Uglah matter in its case in chief but permitted the prosecution to present the evidence in rebuttal, as well as Davis's inconsistent statements, if he took the stand.

The case went to trial, where Davis declined to testify in his own defense after being advised of his right to do so. The jury convicted defendant of the three charges listed above, and the trial court sentenced him to "concurrent prison terms of 2 to 15 years for the unlawful

-2-

imprisonment conviction and 2 to 4 years for the felonious assault conviction, to be served consecutive to a 2-year term of imprisonment for the felony-firearm conviction." *Davis*, 2012 WL 882244, at *1.

Davis appealed to the Michigan Court of Appeals, raising, among other issues, a claim that the trial court effectively denied him his right to testify by ruling that the prosecution could present evidence of his past professional misconduct if he did. *Id*. at *1–2. The Michigan Court of Appeals rejected this argument and ultimately affirmed, *id*. at *1–2, *4, and the Michigan Supreme Court denied him leave to appeal, *People v. Davis*, 819 N.W.2d 908 (Mich. 2012).

Davis then filed this § 2254 habeas petition in federal court. The petition raised two issues: (1) his conviction was obtained by way of prosecutorial misconduct for presenting false evidence; and (2) he was denied his Fifth Amendment right to testify in his own defense. The district court held the petition in abeyance while Davis returned to state court to exhaust his perjured-testimony claim.

So Davis returned to Michigan court and filed a postconviction motion for relief from judgment alleging that the prosecution committed misconduct by presenting false evidence to the court during a pretrial hearing. The postconviction court rejected his motion because it held Davis had already raised this claim in his direct appeal, which precluded postconviction relief. *See* M.C.R. 6.508(D)(2). The Michigan Court of Appeals then denied his application for leave to appeal the trial court's decision. *See People v. Davis*, No. 334445 (Mich. Ct. App. Oct. 19, 2016) (order).

Back in federal court, the district judge reopened the habeas case and ordered the state to respond. At the conclusion of briefing, the district court denied Davis's petition on both grounds, finding no merit in either claim. The court did, however, grant Davis a certificate of appealability

on both issues. Davis now appeals the district court's order denying his petition for a writ of habeas corpus.

## II.

"In an appeal from the denial of habeas relief, we review the district court's legal conclusions de novo and its factual findings for clear error." *Scott v. Houk*, 760 F.3d 497, 503 (6th Cir. 2014). Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a state conviction may be overturned for an issue adjudicated on the merits in state court if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotation marks omitted), "[t]his is a difficult to meet, and highly deferential standard for evaluating state-court rulings," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted).

## III.

Davis first argues that the prosecution committed prosecutorial misconduct by admitting false evidence at the pretrial hearing. The state counters both on the merits and on procedural-default grounds. The Supreme Court has held that federal courts are not *required* to address a procedural-default issue before deciding against the petitioner on the merits, *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (citing 28 U.S.C. § 2254(b)(2)), and we have in the past declined to address procedural default when it "is unnecessary to the disposition of the case." *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (brackets and citation omitted). We take the same tack here and proceed to the merits of Davis's claim, finding no basis for habeas relief.

The Supreme Court has long "made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Therefore, the Court has required a new trial "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury[.]'" *Id*. at 154 (quoting *Napue v. Illinois*, 360 U.S. 264, 271 (1959)). To prove such a claim, Davis "must show that the statement in question was false, that the prosecution knew it was false, and that it was material." *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000). Davis has the burden of proving the evidence was *indisputably false*; merely inconsistent will not suffice. *United States v. Fields*, 763 F.3d 443, 461–62, 463 (6th Cir. 2014).

The allegedly false evidence at issue arises from the prosecution's pretrial "offer of proof" of other-acts evidence. Davis challenges one portion of that offer of proof, relating to an alleged investigation into his immigration inspection of Al-Uglah. In particular, he argues that the following portion of the offer of proof was false, and the prosecutor knew or should have known as much:

> [Davis] improperly completed the deferred inspection of Mohsin Al-Uglah, despite a pending disposition of a 1999 Criminal Sexual Conduct First Degree Penetration arrest in the State of Minnesota, a conviction of which would have made him inadmissible to the United States. Davis entered the following information into the immigration database computer: "Hennepin County Sheriffs Office in Minneapolis, MN records reflect that no official arrest was executed for offense in question."

In support of his claim that this assertion was knowingly false, Davis offers two arguments. First, he claims, without any citation to evidence, that nine months after the prosecutor presented the offer of proof to the trial court, the DHS investigation into Davis concluded, clearing him of all allegations. This is insufficient. Allegations of perjury must be supported by factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir. 1971) (per curiam). It might well be true that

a subsequent investigation cleared Davis of these allegations, but there is nothing in the record to support that assertion. Moreover, nothing about the investigation's conclusion supports the claim that the prosecution *knew* its assertions were false, *Byrd*, 209 F.3d at 517, or that they were *indisputably* so, *Fields*, 763 F.3d at 463. Furthermore, although Davis argues that the allegations in the offer of proof were "untrue" or "false," he also acknowledges that the DHS investigation merely found the challenged allegations to be "unsubstantiated." So even assuming that this unsupported claim is true, an unsubstantiated investigation falls well short of Davis's burden to show that the prosecution's evidence was indisputably false. *Fields*, 763 F.3d at 463.

Davis also attempts to support his claim with citation to an April 2, 2012 records-request response by the Hennepin County Sheriff's Office, which states that "[a] search of the records of this office shows that there is no arrest history at the Hennepin County Adult Detention Center" for Al-Uglah. But, again, this fails to support either that the prosecution's offer of proof was knowingly false, or that it was indisputably so. It is unclear to us how this 2012 response to a record request is sufficient to show that the prosecution knew or should have known in 2010 that Al-Uglah did not face criminal-sexual-conduct charges in Minnesota in 1999. As is apparent from the offer of proof, the prosecution was relying upon the allegations supporting the DHS investigation and Davis has presented no evidence even suggesting that the prosecution knew or should have known at the time of the pretrial hearing that the offer of proof was false. Instead, the evidence presented at most shows only that Al-Uglah was not arrested in Hennepin County—a fact consistent with the offer of proof's contention that Davis entered that exact information into the immigration database. This is insufficient to show that the prosecution's offer of proof, which stated that Davis "improperly completed the deferred inspection of Mohsin Al-Uglah, despite a pending disposition of a 1999 Criminal Sexual Conduct First Degree Penetration arrest in the State

of Minnesota," which has dozens of counties, was indisputably false. *Id.* In sum, petitioner has not met his burden and the district court correctly denied his habeas petition on this ground.

## IV.

Davis also claims that the trial court denied him his right to testify in his own defense under the Fifth and Fourteenth Amendments. This argument does no better.

As the Supreme Court has long noted, "[t]he right to testify on one's own behalf at a criminal trial . . . is one of the rights that 'are essential to due process of law in a fair adversary process.'" *Rock v. Arkansas*, 483 U.S. 44, 51 (1987) (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)). This right "falls under the protections of the Fifth and Fourteenth Amendments," among other constitutional provisions, and can only be relinquished by the knowing and intentional waiver of the right by the criminal defendant. *United States v. Webber*, 208 F.3d 545, 550–51 (6th Cir. 2000).

The main problem with Davis's claim is that, despite his framing of the issue, the trial court never denied him his right to testify. In fact, the trial court, following longstanding precedent, explicitly advised Davis that he had the sole discretion to determine whether he wished to testify at trial. After being so advised, Davis still voluntarily declined to testify, and his attorney confirmed that Davis's waiver of his right was consistent with their earlier discussions.

Regardless, Davis relies on *Rock v. Arkansas* to argue that the trial court unconstitutionally impaired his ability to testify in his own defense. 483 U.S. at 56–62 (holding that a state-court rule per se precluding the admissibility of all hypnotically refreshed testimony violated a defendant's right to testify). But a closer analog is the Supreme Court's decision in *Ohler v. United States*, 529 U.S. 753 (2000). There, the Court held that a district court's decision allowing the prosecution to impeach the defendant with her prior felony convictions did not "prevent [her] from

taking the stand and presenting any admissible testimony which she chooses," and therefore, the practice did not contravene the defendant's right to testify in her own defense. *Id*. at 755, 759–60. Like in *Ohler*, and contrary to *Rock*, the decision here to admit the other-acts evidence was neither a per se prohibition on Davis's testimony nor did it prevent him from "presenting any admissible testimony which []he chooses." *Id*. at 759. As the Supreme Court has held, "it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh [the] pros and cons" of facing cross-examination when making the decision whether to testify. *Id*. at 759–60 (quoting *McGautha v. California*, 402 U.S. 183, 215 (1971), *vac'd in part on other grounds by Crampton v. Ohio*, 408 U.S. 941 (1972)). Therefore, the district correctly determined that the trial court's decision to admit the other-acts evidence for impeachment purposes did not impair Davis's constitutional right to testify.

Finally, and even if the ruling of admissibility on Davis's other-acts evidence raised our concern, it appears that he has failed to adequately preserve this claim for appeal. In other words, the posture of Davis's claim presents the same defects the Supreme Court found impassable in *Luce v. United States*, 469 U.S. 38 (1984). There the Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify," because, otherwise, determining the prejudice resulting from the evidentiary determination is nigh impossible. *Id*. at 43. Furthermore, "[b]ecause an accused's decision whether to testify seldom turns on the resolution of one factor, a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." *Id*. at 42 (internal quotation marks and citation omitted). And here, Davis voluntarily decided not to testify at trial, leaving his claim unpreserved for our review. In short, he has failed to show that he was denied his right to testify.

Finding no cause for relief, it follows that the consistent Michigan Court of Appeals decision, *see Davis*, 2012 WL 882244, at *1–2, cannot be "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), as it must for Davis to overcome AEDPA's high bar.  The district court properly denied Davis's § 2254 petition.

V.

We affirm the judgment of the district court.