

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00029-CR

———————————————————

BRIAN JOE WADJUN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 59,566-C

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

**MEMORANDUM OPINION**

## I. Introduction

A jury found Appellant Brian Joe Wadjun guilty of the second-degree felony offense of possession of a controlled substance of less than 200 grams but more than four grams, found the alleged enhancements to be true, and assessed his punishment at fifty years' imprisonment. In four issues, Wadjun argues that the trial court abused its discretion by admitting evidence of his four prior felony convictions during the guilt–innocence phase and by admitting a Texas Department of Public Safety (DPS) lab report, that the trial court erred by imposing court costs without conducting an ability-to-pay inquiry during sentencing, and that the evidence is insufficient to support the assessment of court costs against him. Because the record reveals that Wadjun opened the door to his prior felony convictions by mentioning them during his direct testimony and that Wadjun did not object to the forensic scientist's testimony about the DPS lab report, we hold that Wadjun has forfeited his arguments as to the admission of such evidence. Further, because the record reveals that the trial court signed an order waiving the court costs that were previously assessed against Wadjun, we hold that his court-cost arguments are moot. Accordingly, we affirm the trial court's judgment.

## II. Background[1]

Officer Ralph Burdick, formerly with the Wichita County Sheriff's Office, was on patrol on the night of November 26, 2016. At 8:53 p.m., he saw a gray 2006 Toyota Corolla pull up to a residence, and then a passenger got out of the vehicle and handed something to someone in the front yard. The vehicle left the scene as Officer Burdick approached in his patrol car. Officer Burdick conducted a registration check, and the registration showed that it was expired.

Officer Burdick initiated a traffic stop. After the driver stopped the vehicle, Officer Burdick approached him, and the driver identified himself as Wadjun. As Officer Burdick explained the reason for the stop, he noticed the strong odor of marijuana coming from the vehicle. Wadjun admitted to smoking marijuana in the vehicle. Officer Burdick asked the occupants[2] to step out of the vehicle.

Officer Burdick then conducted a probable-cause search of the vehicle. Underneath the emergency brake compartment, Officer Burdick found "one Ziploc plastic bag with a blue stripe, two Ziploc bags and a small plastic Ziploc bag. All [four] bags contained a clear crystalline substance that [he] recognized through

---

[1]Because Wadjun does not challenge the sufficiency of the evidence to support his conviction, we set forth only a brief background here. Additional testimony, which is pertinent to the issues that he raises on appeal, is set forth within the discussion of those issues.

[2]The backseat passenger was never identified; he got out of the car at the residence before the traffic stop. The front passenger identified himself as Spencer David Sanderson, but Officer Burdick later learned that the passenger was Wesley Sanderson.

training and experience as methamphetamine." Officer Burdick also found a black backpack in the trunk, and Wadjun claimed ownership of the backpack. Inside the backpack, Officer Burdick found clothes,[3] some syringes, and a black scale that had on it a clear crystalline residue, which Officer Burdick recognized as methamphetamine residue. Officer Burdick weighed the Ziploc bags (which had an aggregate weight of 18.32 grams), collected all the items of evidence, and ultimately placed them in an evidence locker.

While Officer Burdick was sitting in the patrol car with Wadjun, Officer Burdick read Wadjun his *Miranda*[4] warnings and told him about the methamphetamine. Wadjun initially said that the methamphetamine was not his but then admitted that it was. Wadjun talked openly and freely about his drug addiction. Wadjun said that he used two or three grams of methamphetamine per day and had used methamphetamine that morning.

Officer Burdick testified that even without Wadjun's admission that the methamphetamine was his, there was still reason to believe that he was in possession of the drugs because they were in the vehicle, which he was driving and which he claimed to own. Officer Burdick thus arrested Wadjun and booked him into Wichita County Jail.

---

[3]Wadjun also specifically claimed ownership of the clothes.

[4]*Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 1630 (1966).

4

After hearing additional testimony, the jury found Wadjun guilty of possession of a controlled substance in Penalty Group I in an amount of four or more grams but less than 200 grams. After hearing sentencing testimony, the jury found the indictment's two enhancement allegations to be true and assessed Wadjun's punishment at fifty years' confinement. The trial court sentenced Wadjun in accordance with the jury's punishment assessment.

### III. Forfeited Challenge to Admission of Prior Felony Convictions

In his first issue, Wadjun argues that the trial court abused its discretion by admitting evidence of his four prior felony convictions during the guilt–innocence phase. The record, however, demonstrates that Wadjun forfeited this complaint by testifying on direct examination during his case in chief about his prior convictions.

### A. What the Record Shows

During the defense's case in chief, Sanderson testified. Sanderson, who was in prison for various drug charges that included manufacture and delivery, testified that as best as he could remember, the methamphetamine that was found in the car on November 26, 2016, was not his. Sanderson admitted that prior to his current incarceration, he had three or four theft charges and had been convicted of aggravated assault and family violence. When Sanderson was asked again about the methamphetamine in question, he said, "I don't remember . . . just that whole time period. I know every time I got pulled over, I had drugs on me, you know what I

mean?  I had them on me. . . .  I've got the record to prove that.  Can I remember that period of time?  I can't . . . ."

Wadjun also took the stand.  His counsel questioned him about his prior criminal history as follows:

Q.  All right.  Now, you [have] . . . some criminal history, don't ya?

A.  Yes, sir, I do.

Q.  You've been convicted of felony drug charges in the past?

A.  Yes, sir.

Q.  You did your time on those?

A.  Yes, sir.

Q.  You've been convicted of burglary of a habitation?  You've been convicted of evading in a vehicle?

A.  Yes, sir.

Q.  And on those charges, did you go to trial?

A.  No, sir, I didn't.

Q.  What was your plea to those charges?

A.  Guilty.

Q.  Why . . . did you plead guilty?

A.  Because I was actually guilty of them.

Q.  You [pleaded] not guilty in this trial.

A.  Because I'm not guilty.

After this testimony about his prior convictions, Wadjun testified that on the night of the offense, Sanderson told him that the drugs were his and that he was "gonna take care of it," which Wadjun interpreted to mean that Sanderson was going to admit that the drugs were his. Wadjun heard Officer Burdick testify that Wadjun had confessed that the methamphetamine was his, but Wadjun claimed that Officer Burdick had pressured him into saying that; Wadjun did not know why he had made that admission.

On cross-examination, Wadjun said that he could have told Officer Burdick that the drugs belonged to Sanderson but that he did not do that. He then explained that if he had told Officer Burdick that the drugs were Sanderson's, "then something bad would have happened to me and my family." Wadjun said that if he had not been arrested, his next methamphetamine hit probably would have come from Sanderson's bag.

After Wadjun was excused, the defense sought to admit exhibits showing Sanderson's prior convictions in order to impeach his testimony claiming that the drugs were not his. The State objected to the admission of Sanderson's convictions on a variety of bases and also asked to be allowed to admit Wadjun's prior convictions if the trial court decided to admit Sanderson's. After taking the matter under advisement, the trial court ruled, "The way I see it, the admission of these work both ways, so I'm going to admit them." The State offered four of Wadjun's prior

7

convictions,[5] as well as his judicial confessions related to those convictions—all of which were admitted over Wadjun's objection.

## B.     Standard of Review and the Law Specific to Defendant Testimony

The Texas Court of Criminal Appeals has set forth the standard of review applicable to evidentiary rulings and the consequences that can flow from a defendant's decision to testify:

> A trial judge's evidentiary rulings are reviewed under an abuse-of-discretion standard. If the trial judge was correct under any theory of law applicable to the case, we will uphold the judge's decision. We do this even if the trial judge failed to give any reason or used the wrong reason for the ruling.
>
> . . . We have held that "[a] defendant who takes the witness stand may be cross-examined and impeached in the same manner as any other witness." A defendant may be "contradicted, impeached, discredited, attacked, sustained, bolstered, made to give evidence against himself, cross-examined as to new matters, and treated in every respect as any other witness . . . ." And we have observed that a party who "opens the door" to otherwise inadmissible evidence risks the adverse effect of having that evidence admitted.

*Bowley v. State*, 310 S.W.3d 431, 434–35 (Tex. Crim. App. 2010) (footnotes omitted).

Additionally, the United States Supreme Court has spoken to the type of issue presented here in which a defendant introduces evidence of his prior convictions during his direct testimony and then attempts to complain about such evidence on appeal. *See Ohler v. United States*, 529 U.S. 753, 760, 120 S. Ct. 1851, 1855 (2000). The Texarkana court summarized the holding from *Ohler* as follows:

---

[5]Three of the convictions were for felony possession, and one was for evading arrest.

> [T]he United States Supreme Court . . . concluded that "a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error." . . . [T]he consequence of introducing the evidence on direct examination is that the defendant waives any appellate complaint regarding the admission of the evidence.

*Williamson v. State*, 589 S.W.3d 292, 295–96 (Tex. App.—Texarkana 2019, pet. ref'd) (quoting and citing *Ohler*, 529 U.S. at 760, 120 S. Ct. at 1855).

## C.    Analysis

Wadjun's argument on appeal ignores the fact that he opened the door to his prior convictions by specifically mentioning them in his direct testimony. The law is clear that by deciding to introduce such evidence on direct examination, Wadjun forfeited any appellate complaint about the later admission of judgments and judicial confessions for the same convictions that he had preemptively introduced. *See id.* (holding that because appellant testified about his prior convictions on direct examination, he forfeited his complaint regarding their admissibility); *Roderick v. State*, 494 S.W.3d 868, 881 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (same); *cf. Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (assuming that evidence of extraneous murders was inadmissible under Rule 404(b), and holding that trial court did not abuse its discretion because appellant opened the door by deliberately

9

choosing to question a witness about them).[6] We therefore overrule Wadjun's first issue.

## IV. Forfeited Challenge to DPS Lab Report by Failing to Object to Testimony Regarding the Contents of the Report

In his second issue, Wadjun argues that the trial court abused its discretion by admitting into evidence a DPS lab report that constituted hearsay. Although Wadjun objected to the admission of the report, he failed to object to testimony about the contents of the report both before and after the report was admitted, thus forfeiting his complaint.

### A. What the Record Shows

During the trial, the State called Herman Carroll, a forensic scientist with the DPS's Abilene Crime Lab, to testify. Carroll cataloged his education and training, as well as the classes he had taken as part of his continuing education. He explained that his duties as a forensic scientist include analyzing evidence to determine if it contains a controlled substance and testifying "in court on that analysis." Carroll told the jury about the tests that he performs and the instruments that he uses, including a gas chromatograph mass spectrometer (GC/MS), to determine whether an unknown substance contains a controlled substance.

---

[6]Furthermore, the trial court gave a limiting instruction that properly restricted the jury's consideration of Wadjun's prior convictions, and "[w]e generally presume the jury follow[ed] the trial court's instructions in the manner presented." *See Manrrique v. State*, No. 02-19-00458-CR, 2021 WL 4205011, at *12 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op., not designated for publication) (quoting *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998)).

Carroll was asked if he recognized what had been marked as State's Exhibit 1, and he explained that it had his initials and the date on which he had resealed the evidence after his analysis. He also went over the chain-of-custody procedure used by the lab for retrieving and storing evidence, including the procedure he had used for "a heat-sealed plastic bag" that was contained inside the envelope labeled as State's Exhibit 1. For the crystal substance in the plastic bag,[7] Carroll testified that he determined the net weight of the substance without the packaging (which was 6.19 grams, plus or minus 0.04 grams, including adulterants or dilutants) and began his analysis of the substance by performing two color tests and the test on the GC/MS. Carroll said that both color tests of the substance in this case indicated that there was a possibility of methamphetamine. Carroll explained that he then conducted an analysis using the GC/MS, which showed that the substance "did indeed contain methamphetamine." Carroll said that the GC/MS is capable of distinguishing methamphetamine from all other chemicals and that it is scientifically accepted. The State then offered, without objection, State's Exhibit 1—the methamphetamine.

The State asked Carroll if he had prepared a report of his findings in this case, and he answered affirmatively. Carroll identified State's Exhibit 5 as a copy of the lab report that he had produced and noted that the laboratory case number matched the

---

[7]Carroll testified that he analyzed only one of the four bags containing the crystal substance and did not weigh or test the remaining bags because "[f]or efficiency," he tests "to the highest penalty." He further explained, "So in this case, over 4 grams and less than 200 grams would fill a penalty group. If I analyzed the other bags, it still wouldn't take it over, say, 200 grams."

11

one on the envelope in State's Exhibit 1. When the State offered Exhibit 5 into evidence, Wadjun's counsel objected based on hearsay.[8] The trial court overruled the objection and admitted State's Exhibit 5.

The State then asked Carroll various questions about the net weight of 6.19 grams that he had recorded in his report. Wadjun did not object to the State's questioning Carroll about the report. After the State questioned Carroll about his report, the State passed the witness.

## B.     Preservation Rule Specific to this Scenario

In a prior opinion, we set forth the preservation rule applicable to this type of situation:

> [T]he preservation rule requires a party to object each time objectionable evidence is offered unless the party has obtained a running objection or has requested a hearing outside the presence of the jury. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that Texas applies the "futility rule," meaning that despite a trial court's ruling that evidence is admissible, a party must keep making futile objections on pain of waiver). Unobjected-to testimony about objected-to evidence results in forfeiture of the objection. *See Clay v. State*, 361 S.W.3d 762, 767 (Tex. App.—Fort Worth 2012, no pet.) ("[B]ecause [a probation department employee] provided testimony about the Louisiana records without objection before and after appellant's objection to the admission of the records and because appellant failed to obtain a running objection, we conclude that he forfeited his objection to the records' admission." (footnote omitted)); *see also Jones v. State*, No. 06-15-00119-CR, 2016 WL 3197397, at *5 (Tex. App.—Texarkana June 9, 2016, no pet.) (mem. op., not designated for publication) ("[The forensic analyst who prepared the

---

[8]Wadjun's counsel's specific objection is as follows: "Your Honor, I'd object as to hearsay. It's prepared for the purposes of litigation. In addition, he's here testifying as to the facts of the case as he remembers them[,] and this is just hearsay."

DNA report] testified about the results of the DNA laboratory report. Therefore, we find that [appellant] waived his . . . complaints regarding the admission of the DNA report.").

*Walker v. State*, No. 02-16-00418-CR, 2018 WL 1096060, at *4 (Tex. App.—Fort Worth Mar. 1, 2018, no pet.) (mem. op., not designated for publication).

### C.  Analysis

Here, as detailed above, Wadjun objected to the admission of the DPS lab report when it was offered into evidence, but he did not object to Carroll's testimony that preceded the report's admission into evidence.  Prior to the report being admitted, Carroll testified about various facts that also appear in his report.  The State included in its brief a list of facts that were included in both Carroll's testimony and in his report:

- Carroll has a degree in chemistry from the University of Texas at San Antonio and has completed training in controlled-substance analysis.

- He has been trained on how to use a GC/MS.

- He has significant courtroom experience in testifying as an expert witness.

- When he received the substances at issue, he assigned a unique case number.

- Inside a heat-sealed plastic bag, he found four plastic baggies with crystals.

- He tested a substance from only one of the baggies, determined that the substance contained methamphetamine, and weighed it at 6.19 grams (plus or minus .04 grams).

Wadjun's brief is silent regarding the fact that all of this testimony came in without objection prior to the admission of the DPS lab report. Additionally, after the lab report was in evidence, the State questioned Carroll about the net weight shown in the report, and Wadjun did not object.

Thus, any error in admitting the DPS lab report was forfeited when the same evidence came in without objection through the direct examination of Carroll. *See Carrillo v. State*, No. 05-17-00672-CR, 2018 WL 3387364, at \*2 (Tex. App.—Dallas July 12, 2018, no pet.) (mem. op., not designated for publication) (holding that any error in admitting crash-data-retrieval reports was forfeited when the same evidence came in through the examination of the police officer without objection); *Walker*, 2018 WL 1096060, at \*4 (holding that appellant forfeited his objections to the admission of the toxicology report because he objected only to the admission of the report and failed to object to testimony describing the contents of the report); *Clay*, 361 S.W.3d at 767. *See generally Stevenson v. State*, 304 S.W.3d 603, 618 (Tex. App.—Fort Worth 2010, no pet.) ("A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling." (citing *Leday*, 983 S.W.2d at 718)). Accordingly, we overrule Wadjun's second issue.

## V. Challenges to Court Costs Mooted by Subsequent Order

In his third and fourth issues, Wadjun argues that the trial court erred by imposing court costs of $983.70 without conducting an ability-to-pay inquiry during sentencing and that the evidence is insufficient to support the assessment of court costs against him. After Wadjun filed his brief in this court, the State filed an unopposed motion to abate this appeal so that the State could file a motion for the trial court to waive the court costs. This court issued an abatement order, and the State filed its unopposed motion for the waiver of court costs. The trial court thereafter signed an order waiving the court costs. The record containing the order waiving court costs was filed with this court, and the appeal was automatically reinstated. Based on the record before us, we overrule Wadjun's third and fourth issues as moot. *See Mayhew v. State*, No. 07-21-00075-CR, 2021 WL 5127521, at *1 (Tex. App.—Amarillo Nov. 4, 2021, no pet.) (per curiam) (mem. op., not designated for publication) ("The aforementioned remedial acts by the trial court [including issuing multiple judgments nunc pro tunc to delete certain contested fees] appear to have rendered moot the concerns voiced by appellant."); *Schexnayder v. State*, Nos. 01-20-00052-CR, 01-20-00053-CR, 2021 WL 4897828, at *1 (Tex. App.—Houston [1st Dist.] Oct. 21, 2021, no pet.) (mem. op., not designated for publication) (holding that appellant's complaints regarding the assessment of court costs and Crime Stopper's fee against him were rendered moot when, upon a motion by the State, the trial court issued a judgment nunc pro tunc eliminating the complained-of fees).

## VI. Conclusion

Having overruled Wadjun's four issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  February 9, 2023